State *v.* Springfield.

STATE *v.* SPRINGFIELD.

(*Knoxville.*　September 26, 1896.)

JUSTICE OF THE PEACE. *Abandonment of office.*

A justice of the peace does not abandon or vacate his office in the district in which he was elected by opening an office in another district, in which he spends much more of his time and transacts much more official business, keeping distinct sets of dockets, books, and papers for each district, where he continues to reside in the former district, and designates one day in every month on which he will be present at his office therein the entire day, and is present portions of other days at any time when he is needed to attend to official business therein.

Constitution construed: Art. VI., § 15.

Code construed: § 5939 (S.); § 4902 (M. & V.); § 4127 (T. & S.).

Case cited and approved: Strain *v.* Hefley, 94 Tenn., 669.

---

FROM HAMILTON.

---

Appeal from Chancery Court of Hamilton County. JOHN A. MOON, J., sitting by interchange.

W. H. PAYNE, PRITCHARD, SIZER & BIBLE, and Attorney-general PICKLE for the State.

RICHMOND, CHAMBERS & HEAD and COOKE, SWANEY & COOKE for Springfield.

CALDWELL, J.    This is a proceeding in the name of the State of Tennessee, on the relation of C. N. Brown and others, against John H. Springfield, to have his office as Justice of the Peace declared vacant, on account of alleged abandonment.

The facts of the case, as conclusively found by the Court of Chancery Appeals, in an opinion by Judge Neil, are as follows: "The defendant was elected a Justice of the Peace for the Thirteenth Civil District of Hamilton County, in March, 1890, and re-elected in August, 1894.    He has kept an office in Chattanooga, in the Fourteenth District, since December, 1891.    During this period, he has tried and disposed of 3,143 cases at his Chattanooga office, and 11 cases at his office in the Thirteenth District, but the proof shows that there was very little business to attend to in the Thirteenth District, and that he did nearly as much as Mr. McGill, the other Justice of the Peace of the district.    He testifies that he stayed in Chattanooga when he had no official business at home, and sometimes spent the entire week in Chattanooga, though he usually went home one or two evenings in the week, and sometimes every evening, and that, since his re-election in August, 1894, he has had a furnished room in the same building as his Chattanooga office, in which he occasionally sleeps.    His Chattanooga office is rented for a year, but he says he doesn't remember whether the lease provided that the room should be occupied as a Justice's office, but thinks it did not.    He says,

further, that he has a home in the Thirteenth Dis-
trict, and has resided there continuously, and has
kept an office, and exercised the functions of Jus-
tice of the Peace in that district since his first elec-
tion; that he has designated one day in every month,
being the first Saturday, for the transaction of offi-
cial business in the Thirteenth District, and so ad-
vertised to the public, and never tries cases anywhere
else than in the Thirteenth District on the day so
set apart for holding court there; and he further
says it was also understood by the people that he
would be at his residence every Monday morning,
or at any other time that he was needed, to attend
to official business.

"His residence in the Thirteenth District is about
twenty-five miles from Chattanooga on the railroad.
There is not much business in the Thirteenth District,
he says, and he keeps only one docket there for
both civil and criminal business. At his Chattanooga
office he keeps two dockets, one for civil and one
for criminal business; and he keeps all the books
and papers pertaining to the business of his Chat-
tanooga office at that office. In addition to a docket
for civil and criminal business kept by him in the
Thirteenth District, he keeps there the papers per-
taining to the business of that office; and, since
August, 1894, when he was re-elected, he has kept
at his home in the Thirteenth District, the code and
statutes furnished to him by the State as Justice of
the Peace, and for the office that he keeps at Chat-

tanooga, he purchased a code and statutes. He had a number of signs on the doors and windows of his Chattanooga office, announcing himself as a Justice of the Peace, and, among others, one on the door stating that his sleeping room was No. 212 in the same building. He testified that his office was not profitable unless he kept an office in Chattanooga."

This evidence does not establish the proposition that Springfield abandoned the office to which he had been elected. It does not show an intention on his part to desert or forsake his official functions in the Thirteenth District, but, on the contrary, it evinces a studied purpose to exercise those functions in that district, and also in the Fourteenth District. He kept a permanent place of business, with docket, books, and papers in each district, and divided his time between them according to their respective demands.

It is true that he spent much more of his time, and transacted much more official business, in the latter district than in the former one; but that fact, though not calling for encouragement, falls short of establishing an abandonment of official rights in the former district. Notwithstanding his larger business in the Fourteenth District, he continued to reside in the Thirteenth District from the time of his election, and there kept a place of business, at which he could be found one day in every month, a part of one day in every week, and sometimes oftener, for the transaction of official business pertaining to that

13 P—20

district. He did not remove "from the district in which he was elected," and thereby vacate his office under Sec. 15, Art. VI., of the Constitution; nor did he fail to "designate some one day in every month" on which he would be present at his place of official business in that district "to hear and determine all matters cognizable before him," as suggested in § 4902 of the Code of M. & V.

As correctly said by the Court of Chancery Appeals, this Court virtually settled the principle controlling this case, when it, in the late case of *Strain* v. *Hefley*, 94 Tenn., 669, gave an affirmative answer to the question: "Can a Justice of the Peace, elected for one civil district of his county, and having his residence there at the time of his election, and continuously thereafter, with an office in that district, where he holds court regularly, on one day of each week, to try such causes as are there brought before him, legally open another office in another civil district of his county, and there issue writs, try causes, and deliver judgments on such days of the week as he is not engaged officially in his own district?"

The facts embodied in that question are substantially the same as the material facts disclosed in the present case; and the holding in that case, that the Justice might, under those facts, legally pursue the official course suggested in a district other than that of his residence and election, was tantamount to a holding that such an official course in that other dis-

trict did not operate as an abandonment or vacation of his office in the district of his residence and election. For, if he, by the pursuit of such a course, abandoned or vacated his office in the district of his residence and election, he thereby put an end to his official character *in toto*, and could not thereafter legally perform its functions in any district. To make his acts in another district legal, he must, of necessity, be the rightful incumbent of the office in the district where elected. If he may not lawfully assume the functions of his office in the district of his residence and election, he certainly cannot lawfully assume them in any other district.

Let the decree dismissing the bill be affirmed.