# CHARLESTON.

STANTON-BELMENT CO. *v.* CASE *et al.*

Submitted January 24, 1900.—Decided April 7, 1900.

1. JUSTICE SUMMONS—*District—Jurisdiction.*
   A justice cannot issue a summons to a defendant to appear before him at a place, named, without his own district. (p. 784).

2. JUDGMENT VOID.
   A judgment by default rendered by such justice upon such summons is void. (p. 784).

3. PROCESS—*Service—Return—Presumption.*
   Where the return of service of process by an officer is not dated, the presumption is that the service was made within the time prescribed by law. (p. 781).

Error to Circuit Court, Fayette County.

Action by the Stanton-Belment Company against E. N. Case, Samuel L. Carter, and others. Judgment for plaintiff, and defendants bring error.

*Affirmed.*

C. W. DILLON, for plaintiffs in error.

WATTS, OSENTON & ASHBY, for defendant in error.

McWHORTER, PRESIDENT:

The Stanton-Belment Company, a corporation, brought its action of *assumpsit* against Samuel L. Carter, E. N. Case and E. S. Dickinson in the circuit court of Fayette County. The writ was issued on the 26th day of March, 1898, and was returned by the sheriff indorsed, "Executed April 1st on E. S. Dickinson and E. N. Case, by delivering to each of them an office copy of the within; they, and each of them, being found in Fayette County. Geo. W. Mc-Vey, S. F. C." And service was accepted by defendant Carter. On the 20th day of May, 1898, the defendants, by counsel, appeared specially, and moved the court to quash the summons and the return thereon, which motion was overruled, and defendants excepted; and the defendants demurred to plaintiff's declaration, and to each count thereof, which was also overruled, and defendants excepted; and defendants tendered a special plea in writing, which was filed and plaintiff replied generally thereto. Said special plea was to the effect that plaintiff had brought and prosecuted a suit against the same defendants before D. Tamplin, a justice of the peace of said county, then and there having jurisdiction of the cause, which was begun on the 3d day of February, 1898, the cause of action being upon a note,—the same which is filed as the basis of · this action,—and on the 19th day of February, 1898, the said justice rendered judgment upon the said note in favor of plaintiff and against the said E. N. Case, Samuel L. Carter and E. S. Dickinson for the sum of one hundred and forty-eight dollars and seventeen cents· and the costs of plaintiff in that behalf, whereof said defendants were convicted, as by the record of said justice, still remaining upon his docket, more fully appeared, and which said judgment still remained in force, which they were ready to verify by the said record, etc.; and the case was submitted to the court, in lieu of a jury, and in support of · their said special plea said defendants introduce the certified transcript of the justice's docket, and the plaintiff introduced C. W. Osenton, who proved that, at the time of the issuing of the summons and rendering the judgment set up in said plea, the justice, D. Tamplin, was a justice

of Falls district, in Fayette county, and that the summons was made returnable before him in another district, to wit, at his office, in Kanawha district, in said county, and judgment thereon rendered on the 19th day of February, 1898, by default, which evidence the defendants moved the court to exclude, and not to consider, which was overruled, and defendants excepted; and the plaintiff tendered in evidence the note sued upon, dated March 27, 1897, for the sum of one hundred and thirty-seven dollars and twenty cents, to the introduction of which defendants objected. The objection was overruled, and the note considered in evidence, to which defendants excepted, and the court rendered judgment for plaintiff for one hundred and forty-two dollars and sixty-eight cents. Defendants filed four bills of exceptions (Nos. 1, 2, 3, and 4), which were signed, sealed, and saved to them, and the court certified all the evidence.

Defendants obtained a writ of error, and say that the court erred in refusing to quash the summons and return, as set out in bill of exceptions No. 1. There is no defect pointed out in the summons itself, and it seems to be in proper form. It is contended that the return has no sufficient date as to the service; simply saying, "Executed April 1st," without giving the year in which it was served. The writ bears date March 26, 1898, and is returnable on the first Monday in April next. This must be April, 1898. The motion to quash was made in the following May, so that it must, of necessity, have been served on the 1st day of April between the date of the paper served and the date of the appearance. Any other April would be impossible. In *Reid* v. *Jordan*, 56 Ga. 282 (Syl., point 1), it is held, "When the return of service by an officer is not dated, the presumption is that service was perfected within the time prescribed by law." Alder. Jud. Writs, pp. 532, 538. The return is also complained of as not being sufficient because it does not say a true copy of the writ was served on each of the defendants named,—that "an office copy of the within" does not indicate whether the "office copy" is from the clerk's office or from the sheriff's office. According to my observation, the practice of sheriffs is almost universal to use the phrase "office copy," when the

copy is furnished from the office of the clerk who issued the writ, but a return of the sheriff that he served the process by delivering a copy thereof to the defendant in person is sufficient.

It is also claimed, as per bill of exceptions No. 2, that the court erred in not sustaining the demurrer to the declaration, in that the note sued upon was made payable at "Charleston National Bank"; that the declaration alleges that it was presented for payment at Charleston National Bank, but does not allege that it was the Charleston National Bank of Charleston, West Virginia, and that this was the bank and place where the note was intended to be presented; that it might have been payable at the Charleston National Bank of Charleston, S. C., or in some other State. The note was payable at the Charleston National Bank,—the only one of the name in the State, or in all this region of country,—and was there presented for payment, and protested for nonpayment, and this the declaration avers; and if it was presented at the wrong bank, and protested at the wrong place, this could be shown in defense, and would be a good defense as to the indorsers.

It is said that the court erred in hearing and considering the testimony of C. W. Osenton, and permitting the note to be read in evidence over the objection of defendants, and in finding for the plaintiff upon the plea of *res judicata*, filed in the case, as set out in bill of exceptions No. 3. The objection to the introduction of the note was that, according to the printed record, the note offered was indorsed on its face by the protesting notary, "Protested for nonpayment. July 28, 1897," while the declaration alleges that the note sued upon was protested on the 28th of June, 1897, showing clearly a variance between the *allegata* and *probata* and the note should have been excluded. While the printed record shows the date July 28th, the manuscript shows it June 28th, showing that it was simply an error in printing the record; and, further, in the copy of the note set out in the certificate of evidence it shows, written across the face of it, and signed by the notary, "Protested for nonpayment June 28, 1897."

In support of the plea of *res adjudicata*, the defendants introduced the record of the judgment before the justice,

rendered upon the same note sued upon here. This transcript shows:  That suit was brought by issuing summons on the 3d of February, 1898, returnable on February 12th. Returned duly executed, as shown by return indorsed by constable.  Case continued after waiting one hour, and, defendants not appearing, the justice, by agreement with plaintiff's attorney, continued the action seven days, until the 19th day of February, at 11 o'clock a. m., at which time, none of the defendants appearing, after waiting one hour (the defendants still failing to appear, and the plaintiff demanding a trial of the case) the case was tried by the justice, and judgment in favor of the plaintiff for amount of the note and costs.  That on the 20th of February execution was issued and placed in the hands of a constable for collection, and made returnable within sixty days from its date.  On the 26th of March, on motion of plaintiff's attorney the said execution was recalled by the justice and quashed, the judgment set aside, and the case dismissed. The plaintiff introduced as a witness C. W. Osenton, and proved by him that Justice Tamplin was at the time of issuing the summons and the rendering of the said judgment referred to in defendant's special plea a justice of Falls district, and that the summons in the case, issued by him, was made returnable before him in another district, to wit, "at my office in Kanawha district of said county," and judgment there rendered on the 19th day of February, 1898, by default, which evidence the defendants moved the court to exclude and not consider, which was overruled by the court, and exception taken, as set out in bill of exceptions No. 3.  The question is whether the judgment of the justice was void, and, if not, was it within the authority of the justice to set it aside more than a month after its rendition?  Section 115, chapter 50, Code, is the only provision I see in the statute for a justice setting aside a valid judgment rendered by himself.  That must be after reasonable notice to the opposite party, unless he, his agent or attorney, is present, when the motion is made, and then it must be done within two weeks after the judgment is entered.  It is claimed by plaintiff that the judgment of the justice in his favor was without jurisdiction and void.  Section 1, *Id.*, says, "The civil jurisdic-

tion of a justice of the peace shall extend throughout the county in which the district is for which he was elected." While a justice's jurisdiction for general purposes (administering oaths, and taking acknowledgments, depositions, affidavits, etc.) is co-extensive with his county, as provided in the first several sections of said chapter, there are only two cases in which they may exercise judicial functions without their districts. Under section 2 he may issue a summons requiring the defendant to appear before the justice of another district in the same county, if the suit be cognizable by the latter; and under section 3 he may be called to exercise the powers of a justice when the resident justice is under disability to act in a case before him. He may send his summons to any part of his county, requiring the defendant to appear before him at his office in the district of his residence, as provided in section 26 of said chapter 50; but by section 2 he is clearly inhibited, by implication, from making his summons returnable before himself without his district, and he would not be competent to try a case on such a summons. The statute means to protect to that extent, at least, the rights of the justices elected in their respective districts. The object in electing justices for the several districts is for the convenience of the people,—to bring justice to their doors, and that they may not, without good reason, be compelled to go to a remote part of the county to defend their rights in suits that may be brought against them. The judicial powers of a justice are purely statutory, and he cannot go beyond the limits there prescribed. If the legislature had intended to allow him to try cases in any district in his county on his own summons, he would not have been restricted as in section 2, when issuing a summons returnable without his own district,—that it should be for appearance of the defendant before the justice of the district in which the summons was returnable. Being so issued, the justice issuing it might, under section 3, afterwards be called to try the case. The testimony of C. W. Osenton was competent to prove the resident district of Justice Tamplin, and also the district in which the place of trial and return of the summons were located. The transcript of the justice's docket shows that the summons was

"made returnable at my office in the town of Montgomery," and it was competent to show by oral testimony in what district the town of Montgomery is located. The witness states that Justice Tamplin was a justice of Falls district, Fayette County, and that the summons was returnable before him in Kanawha district. The justice not having the legal right to try the matter in difference, and to enter up the judgment of February 19, 1898, the plea of *res adjudicata* was not sustained. The judgment is affirmed.

*Affirmed.*