# CHARLESTON.

### JOHNSTON et als. v. HUNTER et al.

Submitted June 20, 1901. Decided November 16, 1901.

1. **WRIT OF PROHIBITION—*Jurisdictional.***

   The writ of prohibition is purely jurisdictional and will not lie to correct errors or be allowed to usurp the functions of a writ of error or *certiorari*, or of the remedy by appeal. (p. 54).

2. **COURT'S JURISDICTION—*Purely Constitutional.***

   The existence and legal constitution of a court is an inseparable part of its jurisdiction, and it has no power to hear and determine causes except at times and places authorized by law. (p. 54).

3. **JUSTICE'S JURISDICTION—*Confined to His District.***

   Except when expressly authorized by law, a justice of the peace cannot hear and determine a cause in a district other than the one for which he was elected. (pp. 58, 59).

4. **JUSTICE'S JURISDICTION DEFINED—*Process.***

   When a justice of the peace makes his process in an action returnable before him in a district other than the one for which he was elected and in which he resides, he thereby does an act in excess of his lawful powers and the writ of prohibition lies to restrain him from proceeding to try such action without his district. (p. 61).

Error to Circuit Court, Ohio County.

Action by George Johnston and Laura A. Johnston against Annie M. Hunter and others. Decree for plaintiffs, and defendants bring error.

*Affirmed.*

WHITE & ALLEN and R. M. ADDLEMAN, for plaintiffs in error.

S. G. SMITH, for defendants in error.

POFFENBARGER, JUDGE:

This is a writ of error to a judgment of the circuit court of Ohio County, awarding a writ of prohibition, upon the petition of George Johnston and Laura A. Johnston, against W. M. Rogers, a justice of the peace of said county, Henry Stoehr, a constable of said county, and Annie M. Hunter, plaintiff in a civil action, brought before said justice, for the sum of one hun-

dred and forty-five dollars, in which an attachment had been
issued and levied upon a piano, belonging to the defendants in
error, restraining and prohibiting any further proceedings in
said action.  Said justice was elected for, and resided in Centre
district of said county, but made his process in the action re-
turnable before him at his office in the district of Union in said
county.  There was no service of process upon the defendants
and, on the return day, the justice issued a second summons, re-
turnable before him in thirty days.

Our statute provides that the writ of prohibition shall lie "In
all cases of usurpation and abuse of power, when the inferior
court has not jurisdiction of the subject matter in controversy,
or having such jurisdiction, exceeds its legitimate powers." Code,
chapter 110, section 1.  JUDGE BRANNON expresses the opinion,
in *Eastham* v. *Holt,* 43 W. Va. at page 619, that this statute does
not enlarge the common law scope of the writ and, in the many
cases of prohibition decided by this Court, the discussion of the
propriety of the writ in the several cases and of its application in
general has proceeded upon the common law doctrine, respecting
the functions of that writ.   Mr. Works, in his treaties on Courts
and their Jurisdiction, at page 628, says: "Notwithstanding such
statutory provisions the general nature of the writ remains the
same.  Its sole object is to prevent action by an inferior tribunal,
or corporation, body or person claiming to be such, where it has
no jurisdiction to act.  And the act to be prevented must neces-
sarily be judicial in its nature and not ministerial, whatever may
be the character of the tribunal assuming the right to perform
it."  At page 631 he says, "The writ is purely jurisdictional and
will not lie to correct errors or be allowed to usurp the functions
of a writ of error or *certiorari,* or of the remedy by appeal."
These two propositions are laid down by JUDGE SNYDER in
*McConiha* v. *Guthrie,* 21 W. Va. 140, in the following language:
"Prohibition, like all other extraordinary remedies, is to be re-
sorted to only in cases where the usual and ordinary forms of
remedy are insufficient and inadequate to afford redress.  And it
issues only in cases of extreme necessity; and before it can be
granted it must appear that the party aggrieved has no availa-
ble remedy in the inferior tribunals. * * * * It is an original
remedial writ, and is the remedy afforded by the common law
against encroachments of jurisdiction by inferior courts and is
used to keep such courts within the limits and bounds prescribed for

them by law, and should, therefore in all proper cases, be applied without hesitation. But it does not lie for errors or grievances which may be redressed, in the ordinary course of judicial proceedings by appeal or writ of error. It is a fundamental principle and one which will be strictly enforced, that this writ is never allowed to usurp the functions of a writ of error or *certiorari,* and can never be employed as a process for the correction of errors of inferior tribunals." The analysis of the language of the statute referred to shows that the use of this writ is intended only to restrain inferior courts from going beyond the jurisdiction vested in them by law. It lies "In all cases of usurpation of power." This is followed by a clause which clearly defines what is meant by usurpation of power. It is "When the inferior court has not jurisdiction of the subject matter in controversy." It lies in all cases of abuse of power. Such power is abused when the inferior court "Exceeds its legitimate powers." In either case it amounts to a lack of jurisdiction. In the one case, the court has no power or authority to act at all in the premises, or to hear and determine the cause, or to take cognizance of it in any way. In the other, the court has jurisdiction of the cause, power and authority to hear and determine, but in the exercise of its lawful powers, it performs some act which it is forbidden by law to perform, or has no lawful authority to do. In Works on Courts and their Jurisdiction, at page 632, it is said: "A distinction is made, in this respect, in some of the cases, between the entire want of jurisdiction of the general subject-matter and a mere excess of jurisdiction; but the distinction does not seem to rest upon any solid foundation in reason." To determine, therefore, whether prohibition lies in this case, it is necessary to inquire whether the justice, in holding his court outside of his district, although within his county, for the trial of the action brought before him, is proceeding without jurisdiction of the cause, or is abusing his power by doing an act in excess of his jurisdiction.

There are numerous definitions of jurisdiction, the substance of all of which is the power to hear and determine a cause. *U. S.* v. *Arredondo,* 6 Pet. 691; Freeman on Judg., s. 118; *State of R. I.* v. *State of Mass.,* 12 Pet. 718; Works on Courts and their Jurisdiction 16; *Quarl* v. *Abbott,* 102 Ind. 239. That definition probably covers the full meaning of the term, for it may be elaborated in various ways and still retain the same meaning. Power

or authority to hear and determine a cause implies the existence of a tribunal to exercise such power, and such tribunal cannot exist except by authority of law. There must be a court or tribunal with judicial power. This feature has not been overlooked in the many definitions given. "Jurisdiction in courts is the power and authority to declare the law. The very word, in its origin, imports as much; it is derived from *juris* and *dico*—I speak by the law. And that sentence ought to be inscribed in living light on every tribunal of criminal power. It is the right of administering justice through the laws, by the means which the law has provided for that purpose. But here the mode and the manner of administering the justice of the country was not provided or prescribed by the law, and is directly prohibited by it. There was, therefore, no jurisdiction." *Mills* v. *Commonwealth,* 13 Penn. State 630. In that case the court of quarter sessions had tried an indictment at an adjourned session of the court, when the statute did not authorize the holding of an adjourned session for the trial of criminal cases, nor the trial of such cases at an adjourned session. The statute provided that such court might continue beyond the term for such time as might be necessary to complete a trial which had already commenced during the period limited by law for holding said court. It also provided for the holding of special sessions, but forbade the transaction, at such special session, of any business requiring the intervention of a grand jury or a petit jury. Upon consideration of these provisions and the origin and proceedure of such court, both in England and in Pennsylvania, the supreme court held that the court of quarter sessions had no power to try criminal cases at an adjourned term thereof. The following language is used in the opinion: "It is contended also that it is not a case of want of jurisdiction, because the court of quarter sessions has jurisdiction of the offense. True, but it must be a court of quarter sessions, acting and speaking according to law." That the existence of a court is implied in the very nature of jurisdiction and its exercise clearly appears in the definition of a court, which Blackstone says is "A place wherein justice is judicially administered." 3 Blk. Com. 23; 4 Am. & Eng. Ency. Law 447, says a court is "A body in the government, organized for the public administration of justice at the time and place prescribed by law." Courts or tribunals in the nature of courts are the only agencies of the law by which a cause can be heard and deter-

mined, they are the only depositaries of judicial power. Without them it lies dormant and inactive in the sovereignty of the state. Its active and potent existence is inseparable from that of a court. It is not only necessary to the existence of judicial power that can be exercised that it be vested in a court or other tribunal, but there can be no court vested with such power unless and until all the requirements of law, necessary to constitute such court, are complied with. The election and qualification of a judge or a justice of the peace does not constitute a court. The holding of a commission as judge by an individual does not authorize him to hear and determine causes until all other requirements of law, necessary to the transaction of judicial business, are fulfilled. "To constitute a court, the judge or judges must be in the discharge of judicial duties at the time and in the place prescribed by law for the sitting of the court." Works on Courts and their Jur. 1. "The times and places at which courts shall sit are usually fixed by statute, and in order that a court may exercise its jurisdiction, these statutory provisions must be observed. The proceedings of a court at a time or place other than that prescribed by law are *coram non judice,* and, therefore, void. It is not only void; it is not the act of a court at all." Works on Courts and their Jur. 81. In *Doss* v. *Waggoner* and *Doss* v. *Fellows & Johnson,* 3 Tex. 515, in which a district court of a district in which only one term was required by law to be held during the year, held a second term, the supreme court held that the district court had no jurisdiction to try and determine causes at the time the judgments purported to have been rendered. Of these judgments the court said: "They are not even the acts of a court, and are, therefore, not susceptible of appeal or the subjects of revision in an appellate tribunal. Practically the same thing was held in *Baker* v. *Chisholm,* 3 Tex. 157, and in *Hodges* v. *Ward & Ingram,* 1 Tex. 244. The existence and legal constitution of a court as an inseparable part of jurisdiction is recognized in the following, taken from Hawes on Jur. of Courts s. 1: "From its origin, a hearing and a determination of rights seem to be implied; and in natural sequence the proper presentation of the claim, upon which an adjudication is asked, to a proper tribunal; and power in that tribunal to decide upon and determine the rights thus presented."

The matter, upon which the justice in this case has undertaken to adjudicate, belongs to that class of cases over which a jus-

tice of the peace has jurisdiction. It is pecuniary in its nature and is not more than three hundred dollars in amount. The property levied upon under the attachment was in Ohio County, throughout which, by section 1 of chapter 50 of the Code, his civil jurisdiction extends. The sole question presented, therefore, is whether in undertaking to hear and determine said cause in a district other than the one for which he was elected, he is without jurisdiction or power to act. In *Stanton-Balmert Co.* v. *Case,* 46 W. Va. 779, and 35 S. E. 851, it was held that "A justice cannot issue a summons to a defendant to appear before him at a place named, without his own district;" and, further, that "A judgment by default rendered by such justice upon such summons is void." The reason assigned in the opinion for that decision is, that the justice had no jurisdiction or power to act outside of his district, except under provisions of the statute, expressly authorizing him so to do, such as the administering of oaths, the taking of acknowledgments, depositions and affidavits, and sitting in the trial of causes outside of his district, when expressly authorized so to do. In the opinion, JUDGE McWHORTER says: "The judicial powers of a justice are purely statutory, and he cannot go beyond the limits there prescribed." In the argument at the bar, it was insisted that that decision is wrong and should be overruled. In deference to the views of counsel, therefore, the grounds upon which that decision rests are reexamined. Section 27 of Article VIII of the Constitution provides that "Each county shall be laid off into districts, not less than three nor more than ten in number and as nearly equal as may be in territory and population. There shall be elected in each district containing a population not exceeding one thousand two hundred one justice of the peace, and if the population exceeds that number, two such justices shall be elected therein. Every justice shall reside in the district for which he was elected and hold his office for the term of four years, unless sooner removed in the manner prescribed by law. The districts as they now exist shall remain till changed by the county court." In section 28 of said article it is provided that "The jurisdiction of justices of the peace shall extend throughout their county," and also that "The legislature may give the justices such additional civil jurisdiction and powers within their respective counties as may be deemed expedient, under such regulations and restrictions as may be prescribed by general law, except that in suits

to recover money or damages, their jurisdiction and powers shall in no case exceed three hundred dollars." Chapter 50 of the Code, relating to powers, duties and liabilities of justices and constables and the proceedings in civil suits, and in the trial of offenses, of which justices have jurisdiction, contains the provisions of the Constitution respecting their jurisdiction in civil suits. It has not expressly conferred upon a justice the power to keep his office and transact his business outside of the district for which he was elected. No place at which a justice shall hold his court is prescribed either in the Constitution or in the statute. The Constitution requires him to reside in his district, and no place being designated at which he shall hold his court, as in the case of a circuit judge, the presumption is that one reason for this requirement is to secure the holding of such courts in all the districts of the county and, as said by JUDGE McWHORTER, to bring justice to the doors of the people, that they may not, without good reason, be compelled to go to a remote part of the county to defend their rights in suits that may be brought against them. Confinement of a justice to his own district in the trial of cases operates to the advantage of the citizens of the district by enabling them to bring their suits, without going beyond the limits of the district in which they reside, and this may have been one reason for inserting that provision in the Constitution. As the justice may summon before him a defendant residing in any part of the county, the Constitution and laws providing that his civil jurisdiction shall extend throughout the county, debtors may be required to appear before a justice in any part of the county to make their defense. So plaintiffs may go to a justice in any part of the county to bring their suits, but as the law provides that one justice at least shall be found in every district, persons desiring to institute suits are not compelled to go beyond the limits of their district to do so. If a justice, after election and qualification, were permitted to reside out of his district, it might result in the removal of all of them to a city or place of heavy population in some one portion of the county and thus compel all persons, residing in certain districts of the county, to go many miles, at considerable expense, and at great inconvenience, to institute such actions as they may desire to bring. Such a condition of things would deprive the citizens of some or most of the districts of the presence of a justice among them to take acknowledgments of deeds and

perform other official duties, necessary to the transaction of business. The principle of local self-government is firmly imbedded in the organic law of the State, and the positive requirement of the statute that a justice of the peace shall not only be a resident of the district, that he may be eligible to the office, but shall continue to remain in the district during his term of office, is in complete accord with that principle. Residence, as a qualification for office, is held by the authorities to mean the same as domicile. *People* v. *Platt,* 117 N. Y. 159. A justice of the peace must, therefore, not only have a residence in the district, such as will entitle him to vote and do other acts there, but must actually reside and be there. His office is not representative in character in the sense in which a legislative office is representative, so that his official business must be transacted out of his district. It is more than that. It is representative to the extent that each locality in the county may have some person of their own choice to act in that capacity, but it is further required that he shall actually reside and be among them, where ordinarily he would be expected to transact and perform his official duties and keep his court open for the transaction of their business. While the statute does not say he shall keep an office anywhere, there is one provision in the statute which assumes that every justice does have an office, and that is section 26 of chapter 50, in which the form of summons is prescribed, and that requires him to cause the defendant to be summoned, to appear "before me at my office in the district of ————." It is necessary for the convenience of the people and for the safety of the interest of the parties to any action, and the interest of any person who may be summoned to answer the complaint of another person, that the place at which such action will be tried may be known to a reasonable certainty. The justice is not required to specify in his summons the particular place at which it is returnable. It is sufficient to make it returnable at his office. If it is returnable at his office in his own district, where that office is, is made reasonably certain but, if made returnable to his office in another district, there is presumably nothing known to the defendant which might be calculated to indicate to him the locality of that office. As has already been shown, to constitute a court it is not only necessary that some person be authorized to judicially administer justice, but he must act in the place and at the time prescribed by law.

Against this view of the question stand some considerations which tend to establish a different conclusion. Lest it may be thought they have been overlooked, mention must be made of them. Originally a justice of the peace was undoubtedly a county officer. The history of the office and its origin are given in the Virginia Code of 1849 at page 243. Also in Code of 1860, 276. One of the first regular general assemblies ever held in Virginia directed, in 1623, that courts be held once a month, by the commanders of plantations, settlements, and such others as the governor and counsel should commission, to decide certain controversies and punish petty offenses. In 1631, these judges were styled "commissioners" and directed to hold monthly courts in their counties or settlements and were given the same powers as justices of the peace in England. In 1642 commissioners were directed to hold "county courts" in the counties formerly named and other counties. In 1661-62 these commissioners were designated justices of the peace, and the number of justices in each county had become so great that inconvenience resulted and they were limited in number to eight for each county, four of whom might constitute a court. In 1776 the office was made appointive by the governor and counsel upon the recommendation of the county court, and remained so until the constitution of 1851 made them elective by the people, as they still are. 1 Min. Inst. 124. That constitution required each county to be laid off into districts, and four justices of the peace were required to be elected in each district, and they were required to reside in their respective districts. They were to choose one of their number to preside over the county court, which was made to consist of not less than three nor more than five justices. Their power and jurisdiction within their counties was such as might be prescribed by law. Code 1860, 54. Sec. 4, ch. 48, Code 1860, reads as follows: "Jurisdiction of justices shall be as now or may hereafter be prescribed by law." This left in their hands all the powers and jurisdiction which had been vested in them at the time of the adoption of said Constitution. Under the Virginia constitution of 1830, which was in force up to 1852 there was no such thing as a magisterial district. That constitution provided that, "The judicial power shall be vested in a supreme Court of appeals, in such superior courts as the legislature may from time to time ordain and establish, and the judges thereof, in the county courts, and in justices of the peace. The legisla-

ture may also vest such jurisdiction as shall be deemed neces-
sary in corporation courts, and in the magistrates who may be-
long to the corporate body." Section 7 of Article V read as fol-
lows: "On the creation of any new county, justices of the peace
shall be appointed, in the first instance, in such manner as may
be prescribed by law. When vacancies shall occur in any county,
or it shall, for any cause, be deemed necessary to increase the
number, appointment shall be made by the governor, on the
recommendation of the respective county courts." Thus it ap-
pears that up to within less than fifteen years of the organization
of this State such a thing as a magisterial district had no ex-
istence. The jurisdiction of a justice was co-extensive with his
county and he might transact business and try cases in any part
of the county. While under the constitution of 1851, magiste-
rial districts did exist, justices were elected by districts, and
were required to reside in their districts, their jurisdiction re-
mained, under the legislation of the state, as it was at the time of
the adoption of that constitution, and they were not confined to
their respective districts by any legislative act. Such was the
law and such the status of a justice of the peace at the time of
the organization of this State. The West Virginia Constitution
of 1863 required each county to be laid off into not less than three
nor more than ten townships, in each of which a justice of the
peace should be elected every four years, and in some an addi-
tional justice might be elected, it depending on the population of
the township. Section 8 of Article VII of that Constitution
provided that "The civil jurisdiction of a justice shall extend to
actions of *assumpsit,* debt, detinue and trover, if the amount
claimed, exclusive of interest, does not exceed one hundred dol-
lars, when the defendant resides, or, being a non-resident of the
State, is found, or has effects or estate within his township, or
when the cause of action arose therein; but any other justice of
the same county may issue a summons to the defendant to ap-
pear before the justice of the proper township, which may be
served by the constable of either township." Said section fur-
ther provided that "The legislature may give to justices and con-
stables such additional civil jurisdiction and powers, within
their respective townships, as may be deemed expedient," but it
was not authorized to give them any civil jurisdiction outside of
their townships. The Constitution itself made some special
provisions by which a justice might act outside of his township.

Chapter 50 of the Code of 1868, enacted by the legislature in pursuance of these constitutional provisions, confined the civil jurisdiction of a justice to his township, except in certain instances in which the Constitution permitted its exercise beyond the limits of the district. Section 1 of that chapter is as follows: "The civil jurisdiction of a justice shall be limited to the township in which he was elected, except as hereinafter provided." Such was the law until the adoption of our present Constitution in 1872, the provisions of which, relating to justices of the peace, have been quoted. The first legislation under this Constitution, respecting justices of the peace, is found in the Acts of 1872-3, of which section 1, chapter 226, is as follows: "The jurisdiction of justices and the powers and duties of constables shall extend throughout their counties." At the session of 1881, chapter 226 of the Acts of 1872-3, defining the jurisdiction, powers and duties of justices of the peace and constables, was amended and re-enacted so as to read substantially as the law is now found in chapter 50 of the Code. Of that chapter, chapter 50 of the Code of 1868, the law as it stood under the old Constitution of 1863, is the basis. A comparison of the two chapters will show this, and that in many sections they are nearly identical, except that the word "township" is stricken out of the chapter in the Code of 1868 and the word "county" or "district" inserted. Section 1 extends the civil jurisdiction of a justice throughout his county, whereas the same section in the Code of 1868 limited it to the township in which he was elected. This change in the organic and statute law of the State argues, it must be admitted, that there was a purpose to restore to the justices of the peace the jurisdiction and powers which were vested in them at the time of the adoption of the Constitution of 1863. It must also be remembered that from the time of its adoption until amended in 1880, the present Constitution required that the county court be composed of a president, to be elected, and two justices of the peace, except in cases in which the Constitution required the presence of a greater number. In all cases where a levy of the county was laid, it required a majority of all the justices elected in the county, to constitute a quorum of that court for the transaction of that business. That court was a judicial tribunal as well as a fiscal board. This preserved to justices of the peace, in some sense, the character and status of a county officer. In addition to this,

there are some decisions by the courts of other states, bearing upon the question, which do not conflict with the position taken by the plaintiff in error here. In Tennessee, the constitution provided that there should be two justices and one constable elected in each district and that their jurisdiction should be co-extensive with the county. The legislature provided that every justice should designate one certain day in each month, when he should attend, at his usual place of residence or some other convenient place in his district, to hear and determine all matters cognizable before him: "Provided always, that nothing herein contained shall prevent any justice of the peace from trying any cause that may be brought before him at any time or at any place within the county." Under this state of the law, the Supreme Court held that a justice might have two offices in separate districts and legally exercise his jurisdiction to try cases outside of the district for which he was elected. *Strain* v. *Hefley,* 94 Tenn. 668; *State* v. *Springfeld,* 97 Tenn. 302. In *Jones* v. *Church of the Holy Trinity,* 15 Neb. 81, the court said, "The justice of the peace, although appointed for Capitol precinct, where he ought to have held his office, had jurisdiction co-extensive with the limits of Lancaster county, which necessarily covered Midland precinct, and but for the policy of the law respecting the convenience of suitors, witnesses, and others having business with him, could doubtless perform his official duties anywhere therein. The holding of his office or place of business within the particular precinct for which the justice is elected or appointed, so long as he keeps within the county, is not a matter respecting his jurisdiction, but one of policy and convenience merely, which those interested therein may disregard. If the jurisdiction of a justice of the peace were confined to the particular precinct for which he was elected, it would doubtless be otherwise." There are numerous cases holding that justices must hold their courts in the political division for which they were elected, but most of them, if not all, are cases in which the justices were expressly required by statute to reside and hold their courts there. 18 Am. & Eng. Ency. Law (2d Ed.) 36. No case found seems to conflict with the proposition that a justice having jurisdiction co-extensive with his county, and not expressly required by law to hold his court in the district of his residence, may hold it and hear and determine causes in any part of his county.

However, all this is not conclusive of the question. It amounts

to nothing more than argument in favor of the contention of counsel for the plaintiff in error and simply stands in opposition to the reasons assigned in support of the opposite contention. The question has its two sides with weighty considerations supporting both. The proper conclusion is not susceptible of the certainty of mathematical demonstration. The doubt has been resolved by this Court in the case of *Stanton-Balmert Co. v. Case,* and to hold now that a justice has general jurisdiction to hear and determine causes in districts other than that for which he was elected, it would be necessary to overrule that case. In addition to the reasons assigned against such jurisdiction, this Court is confronted with the principle of *stare decisis.* Former decisions ought not to be overruled unless clearly wrong. Another thing which suggests itself at this point is, that the words "Before me at my office in the district of ———," were taken from section 26 of chapter 50 of the Code of 1868, except that where the word "district" now appears the word "township" was then inserted. Under the rule of construction that repealed statutes *in pari materia* may be referred to and the definition, meaning and construction of terms therein used, may be applied in determining the meaning of the same language in the new statute, this fact may be entitled to peculiar weight in determining this question.

As the justice is required to limit his trials of causes, generally, to his own district, that is, to hold his court in his own district, it follows, from the principles of law, relating to jurisdiction, hereinbefore adverted to, that Justice Rogers has no legal power to proceed in the action in Union district. He is a justice of the peace, having jurisdiction of the class of cases to which the one in question belongs, but he has no jurisdiction of that particular case because it was not instituted before him, and is not to be tried by him, at a place in which he has the right, generally, to try any civil case. Moreover, in attempting to exercise his powers in a district other than the one for which he was elected, he is abusing the judicial power and jurisdiction vested in him by law. He is calling upon suitors to attend before him at a place to which he has no right nor power to require them to come, and is attempting to compel them to do so by the process of the law. As we have seen, the writ of prohibition lies in any case in which an inferior court has not jurisdiction of the subject matter in controversy, or having such jurisdiction, ex-

ceeds its legitimate powers. It matters not in such cases, that an appeal might lie to the circuit court for the correction of the unauthorized act of the justice as a mere error in his judgment, for section 1 of chapter 110 of the Code says, that in such cases, "The writ of prohibition shall lie as a matter of right," which makes its application depend not upon the discretion of the court, or the inadequacy of the ordinary proceedings for the correction of error, but simply upon the question of the want of jurisdiction or the doing of some act in excess of the legitimate powers of the inferior court.

There is, therefore, no error in the judgment complained of, and it must be affirmed.

*Affirmed.*