E. F. AUSTIN *v.* E. E. KNIGHT, *Justice, etc., et al.*

(No. 9341)

Submitted March 17, 1942. Decided March 24, 1942.

*W. H. Daniel* and *William C. Graham,* for petitioner.
*W. K. Cowden, Jr.,* for respondents.

RILEY, JUDGE:

Petitioner, E. F. Austin, invoking the original jurisdiction of this Court to a writ of *habeas corpus ad subjiciendum,* Code, 51-1-3, seeks relief from imprisonment imposed upon him by E. E. Knight, justice of the peace of Gideon District, Cabell County.

Petitioner is confined in the Cabell County jail, of which respondent Harvey C. Taylor, sheriff of said county, is the jailer. He alleges that his detention is illegal for the following reasons: (1) He was tried by respondent Knight in the county jail, which is located in Kyle District; (2) he was arraigned and tried in the police court of the City of Huntington and therefore his commitment to jail by the justice constitutes double jeopardy; (3) the justice of the peace had no proper jurisdiction of his person because the trial and sentence by the justice were without proper warrant; and (4) the justice of the peace was disqualified to try petitioner because he had a monetary interest in the outcome of the trial.

The case was heard on petition, the answer and return of the respondents Knight and Taylor, and testimony bearing on the issues, a transcript of which was exhibited to this Court.

Petitioner was arrested February 21, 1942, by city police officers for being intoxicated in a public place in the City of Huntington, and confined in the city jail. Three days later he was arraigned before John G. Hudson, police judge of the City of Huntington. There is a variance in the testimony as to what then occurred. According to petitioner, he was tried and fined in the police court. This is denied by the police judge, who testified that petitioner came to his desk and told him that he lived in Ashland and that he had or could get a job there, whereupon petitioner was told that his case would be transferred to a justice of the peace who would be just as lenient as he (Hudson) would be. The docket of the police court shows no plea or sentence as to petitioner. It simply carries the notation that he was transferred to the State, and in the record we find a paper headed "TRANSFERS TO STATE COURTS,"

purporting to have been signed by Hudson as police judge, and upon which appear fifteen names, including that of petitioner.

According to respondent Knight, petitioner, together with fourteen others similarly confined, was delivered into his custody. The prisoners were then taken from the police court room to the corridor of the city hall, and there asked if they desired to plead guilty; if not a hearing would be accorded. None indicating a desire for hearing, he thereupon sentenced each of the prisoners while they were in the city hall. There is testimony by some of the witnesses who, like petitioner, were transferred to respondent Knight for trial, that their cases were transferred only upon the police judge's ascertaining that they could not pay the fine and costs assessed by him as police judge, and that the sentences were imposed by respondent Knight in the county jail in Kyle District and not in the city hall in Gideon District. Were this true, the justice acted outside of his district and would be without jurisdiction, and petitioner's detention would be unlawful. *State* v. *Hines*, 100 W. Va. 505, 130 S. E. 669; *Johnson* v. *Hunter*, 50 W. Va. 52, 40 S. E. 448; *Stanton-Belment Co.* v. *Case*, 47 W. Va. 779, 35 S. E. 851. Knight is corroborated partly by the police judge who stated that the justice called the prisoners out, had them in the corridor of the city hall, and that when he (Hudson) passed through the corridor, he heard the justice calling the names of the prisoners and taking their pleas. Hudson left before the taking of the pleas was completed, and does not recall whether he heard petitioner plead. It must be remembered that so far as the record is concerned, Hudson, after he caused the prisoners to be turned over to Knight, had no interest, official or otherwise, in the controversy in this record. Moreover, Knight is corroborated by the witness Rollyson, who testified that sentences were imposed before "we got over there," meaning the county jail. Hence we believe that the testimony of the police judge and Rollyson sufficiently corroborates the contention of Knight so as not to justify a conclusion that sentence was imposed upon petitioner elsewhere than in the city jail.

The second ground upon which petitioner relies for his release from imprisonment is that when he was arraigned and tried in the police court, his commitment to the county jail constituted double jeopardy. We have already detailed the conflict of testimony between the police judge and the petitioner. It suffices to say that even though the factual situation were as petitioner states, a conviction in the police court would not necessarily have been a bar to prosecution by the State. Whether the offense charged in the trial before the city officer is an offense under an ordinance of the City of Huntington identical to an offense under Code, 60-6-9, so that Code, 50-18-1, is applicable, we can not say as the ordinances of the City are not in this record. But see *State* v. *Mills,* 108 W. Va. 31, 150 S. E. 142, in which this Court held that a conviction of assault and battery under a city ordinance is not a bar to prosecution for the same offense under the statute, for the reason that the two offenses are not identical, in that one contemplates disturbance of the peace and good order of the city and the other the maintenance of the peace and dignity of the State. See also, *Schad* v. *McNinch,* 103 W. Va. 44, 136 S. E. 865, 57 A. L. R. 506n, 66 A. L. R. 629n.

The third assignment by petitioner is that the justice was without jurisdiction of his person because he sentenced and committed him to jail without a proper warrant. We think there is merit in this contention. In this jurisdiction a warrant is prerequisite to trial and conviction by a justice of the peace of a person charged with an offense, except where the offense is committed in his presence or in the presence of a constable. Code, 50-18-2. Code, 50-18-4, provides for the issuance of a warrant by a justice "only on the information, under oath, of some credible person," and requires a description of the offense alleged to have been committed. Since the offense of which petitioner was convicted was not committed in the presence of the justice or constable, a warrant was prerequisite to petitioner's trial and conviction. Does the record show that such a warrant existed?

The evidence is without contradiction that the only "warrants" which the justice had were handed to him by Hudson in the corridor of the city hall; that they were signed by him in blank, not as police judge but as a complaining witness, and remained in blank until petitioner was committed to jail. While witness Hudson and respondent Knight repeatedly refer to the papers handed to Knight by Hudson as warrants, we believe them to have been merely the information upon which warrants could have been issued. Although the justice himself was a witness, at no time during the taking of testimony did he present either to petitioner's counsel or for examination by this Court the original or a copy of the warrant issued for petitioner. If a warrant did exist, it was, presumably, in the custody of the justice. Knight testified that there was in fact a warrant, but, according to his own testimony, it was only after the prisoners were sentenced and committed to jail that he went to his office and there filled out the warrants. Knight admits that this is his customary practice in the matter of issuing warrants. This practice followed by Knight in the instant case is not pursuant to the procedure contemplated by the statute, and there being no warrant at the time of plea and conviction, Knight, as justice of the peace, was without jurisdiction to commit petitioner to the county jail.

We are not unmindful that procedure of a justice of the peace is not attended with the usual formalities which prevail in trial courts such as our circuit, common pleas and criminal courts; but, in the instant case, a proper procedure of necessity had to stem from a valid warrant. Under our system of jurisprudence a trial wherein a citizen's freedom is in jeopardy connotes an orderly procedure, and one which has preserved great respect for courts and the belief that under our government laws, and not men, govern. We have herein detailed the testimony which mirrors the method of trial accorded this petitioner, and find it wholly wanting in the observance of an orderly procedure.

For the reason herein discussed this Court on March 18, 1942, entered an order requiring petitioner's discharge. No costs are to be awarded because respondent Taylor, as

sheriff, was simply performing his official duty, and respondent Knight, justice of the peace, was not a proper party to this proceeding.

*Order entered discharging petitioner.*

Fox, President, concurring:

I concur in the opinion written by Judge Riley, which awards the writ on account of the absence of a warrant at the time of the trial and sentence; but I find other errors in the proceeding, under which petitioner was deprived of his liberty, which merit attention and which, in my opinion, furnish additional grounds for the issuance of the writ.

First: I think the petitioner was sentenced in the county jail, and outside of the magisterial district in which the justice who imposed the sentence was elected, and could properly act, and that the sentence was, for that reason, void.

Second: I question the right of the police judge to arbitrarily transfer prisoners to a justice of the peace. There may be cases where this is justified, as where the offense charged is of a nature not fully cognizable in a police court. But here, petitioner was arrested by the city police officers and placed in the city jail. He was arraigned before the city police judge, who had full power to impose proper punishment for the offense alleged, that of drunkenness. For no satisfactory reason there was an arbitrary transfer to the justice of the case of the petitioner and fourteen others, all charged with the same offense. Why was this done? It may be that failure to give satisfactory answer to this question would not, in itself, justify the issuance of the writ, but, even so, I think the transfer in the instant case was wholly unwarranted and furnishes additional support for the issuance of the writ. The police judge, having taken jurisdiction of the case, should have tried and determined the same, or, if there was a confession, imposed sentence. Explanations of the necessity for the transfer are not, to my mind, satisfactory, and the proceeding, as a whole, creates doubts as to the real reason

for the transfer, so strong as to seriously undermine public confidence in courts of justices.

Third: I further believe that one charged with a criminal offense is entitled to an opportunity for an orderly and separate trial, which was not given petitioner when, along with many others, he was herded in the corridor of a public building and called upon to answer. Fifteen men were given sentences ranging from ten to sixty days, without any showing which would justify any discrimination, all being charged with the same offense. All this may be due process of law, but I doubt it.

I am authorized to say that Judge Lovins concurs in this note.