# CHARLESTON.

KING *v.* DOOLITTLE, *Judge.*

Submitted September 12, 1901. Decided March 8, 1902.

1. APPEAL—*Proper Remedy Not Prohibition.*

Where an appellate court reverses the decree of a circuit court, and adjudicates the principles then involved in the case, and remands the case, and in further proceedings it is claimed that the circuit court is disregarding the decree of the appellate court, and departing from its decision, and re-hearing matters heard in the appellate court, no writ of prohibition lies for the reason that an appeal is the proper remedy. (pp. 93-5).

Henry C. King filed his petition in this Court praying for a writ of prohibition against E. S. Doolittle, Judge of the Circuit Court of Cabell County *et al*, respondents.

*Writ Denied.*

M. F. STILES, for Petitioner.

W. P. HUBBARD, CAMPBELL, HOLT & DUNCAN, for Respondents.

BRANNON, JUDGE:

As will appear from *State* v. *King,* 47 W. Va. 437, in the year 1894 the State of West Virginia brought a chancery suit against Henry C. King and others in the circuit court of Wyoming County, which was afterwards removed to the circuit court of Logan County, and still later to the circuit court of Cabell County, having for its object the sale of that part lying in this State of a tract of five hundred thousand acres of land patented

by the State of Virginia to Robert Morris, 23rd of June, 1795, now claimed by King, on the ground of its forfeiture to the State for failure of its owners to assess it for taxes. King filed an answer in the case contesting the forfeiture, but asking that if it should be decided that the land had been forfeited, he might be allowed to redeem it. It appeared that title to only about ten thousand acres was unclaimed by others, and King concluded to redeem only this by payment of the sum proper to redeem that quantity. A decree was made in the case declaring that the land had become forfeited, and that King had right above all others to redeem, and he having paid a certain sum which was computed as chargeable for ten thousand acres, the decrees accepted it as a proper sum to accomplish redemption and declared that all the land of the tract lying in West Virginia had been redeemed from forfeiture. Upon appeal this Court decreed a partial reversal of the decree, and held that the decree of the circuit court of Wyoming County, "pronounced in this case on the 30th day of September, 1897," in so far as it allows the appellee, Henry C. King, to redeem the land described in the decree by reason of the payment of the sum of three thousand and ninety dollars and eight cents, costs, taxes and interest fixed by the circuit court, and in so far as it ascertains and fixes such costs, taxes and interest be and the same is hereby set aside, reversed and annulled, and in all other respects the decree is affirmed. And * * * this cause is remanded to the circuit court of Wyoming County with direction to said court to permit the said appellee, Henry C. King, to amend his petition so as carefully and accurately locate the portion of said land he desires to redeem." After the cause went back to the circuit court the State, as required by that court, filed a fifth amended bill, against King's objection, making about four hundred new parties, and saying that they were claimants to parts of the land. These were persons whom King had named in his answer filed before said decree as persons claiming parts of the land, and who, as the answer suggested, should be made parties; but they were not made parties prior to the decree. When the proposition to file said fifth amended bill was up, King retracted that part of his answer suggesting that those persons should be made parties. Some of these new parties appeared and denied King's right to redeem. Those who were already parties were also made parties to the amended bill. Under direction of this Court King

filed a petition specifying what particular parts of the land he wished to redeem, disclaiming right to redeem other parts, and the tracts and persons owning them which he did not desire to redeem were dismissed from the case; but some of the parties to said fifth amended bill do claim land covered by that which King desired to redeem, and they contest his right to do so. The court referred the cause to a commissioner to report as to the title of the parties, including these new parties, and other matters, including some matters which had been reported upon in a report made under a former reference, when the new parties brought in by the fifth amended bill were not parties. Thus far the case had proceeded when King applied to this Court for a writ of prohibition against the circuit court to prohibit it from further proceeding on said fifth amended bill, or upon the answers to it, and from receiving any further answers to it, and from prosecuting any examination or inquiry into any matters which had been adjudged by the decree of this Court, except only as to the amount of taxes, interest and costs chargeable on the lands specified in King's amended petition as the lands which he had selected for redemption, and from denying Kings right of redemption.

At the threshhold the question comes up, Does a writ of prohibition lie now, or must King wait until he is aggrieved by actual decree, and then have recourse to the ordinary appeal? King's theory to maintain prohibition is that this Court by its decree held, as a finality, that he had right to redeem such parts of the land as he should specify superior to any others before the court; that though he had named in his answer long ago those new parties, and suggested that they should be parties, the court proceeded without making them parties, and that though it was assigned as·error on the appeal that they had not been made parties, this Court did not adjudge that they were necessary parties, but by silence as to them impliedly decreed that they need not be parties; that the circuit court could not make them parties, or entertain or pass upon their rights, or do anything further in the case as to King than to ascertain and receive the amount of money proper for the redemption of the lands which he wished to redeem; in a word, could only execute the decree of this Court.   On the contrary the State contends that it is proper and necessary under chapter 105 of the Code of 1899 that these new parties should be before the court, and that their

rights against King's claim of redemption should be investigated, in order to see what are the lands the title to which remains in the State, as its title may have passed under the Constitution and law to those new parties, and as the statute allows the redemption only of those lands the title to which is still in the State, and does not allow redemption of those lands the State title to which by forfeiture has passed out of the State to other claimants; and that the statute demands that all parties interested claiming the lands, or any part thereof, should be before the court, in order to settle and quiet the title, and give repose to lawful claimants, and to sell a good title, free from litigation, to those parts which should be held liable to sale. Now, no one questions that the court had in the start, and yet has, incontestable jurisdiction of this suit; but it is claimed that entertaining this fifth amended bill and its parties and their rights, and allowing them to contest King's right of redemption, is contrary to the decision of this Court, and denies him the right of redemption accorded him by the decree of this Court, and is without jurisdiction so to do, and an abuse of its lawful jurisdiction in so acting. It seems to us very plain that granting for argument the correctness of King's view, and assuming that the circuit court shall hold contrary thereto by entertaining said fifth amended bill and hearing contests between King and its new parties, and by finally decreeing against him in favor of them, it would be judicial error, remediable by appeal to this Court. If after reversal of a decree by an appellate court the lower court re-hears matters settled by the appellate court, departs from its decision, and decrees contrary thereto, there is ample remedy by the ordinary appeal. Instances are innumerable of repeated appeals in the same case, and what is the difference between an ordinary error and one which is error because of a departure from a prior decision, owing to misconstruction or wilful disregard of it? In the nature of the matter there is no difference. It is error, no more in the one case than in the other. Is it not an ancient function of a court of equity, constantly exercised, to entertain amended bills as long as there are proper matters to be presented by them? Is the court acting without jurisdiction in so doing? Is it an abuse of its jurisdiction to do so? Will its so doing call for prohibition? If so, prohibition will supplant appeals. Error it may be, but not an act without jurisdiction, or an abuse of jurisdiction. Is the

court to anticipate error and prohibit it in advance? How many times has it been held everywhere that if a court has general jurisdiction of the subject matter, any error will not be without jurisdiction, or in abuse or excess of it, but only error in adjudicating a matter within its legitimate authority, and that the remedy is by writ of error or appeal, not by prohibition? *State* v. *Kyle,* 8 W. Va. 711; *McConiha* v. *Guthrie,* 21 *Id.* 134; *County Court* v. *Boreman,* 34 *Id.* 362; *Sperry* v. *Sanders,* 40 S. E. 327; *Johnston* v. *Hunter,* 40 S. E. 448. There is nothing to take this case out of that rule. The case of *N. & W. Ry. Co.* v. *Pinnacle Coal Co.,* 44 W. Va. 575, will not so operate, as that is an exceptional case and stands alone on the theory of a total want of power in a justice, in absence of legislative enactment, to fix railroad charges, and on absence of jurisdiction to justify an action having no ground known by common law or by statute —total want of jurisdiction to begin to hear. But who challenges the jurisdiction of the circuit court here? All that can be said is that it is taking some erroneous steps towards a decree, which may or may not be entered; that is, it is claimed that such steps are erroneous. Shall I cite books to prove that where there is other adequate remedy, prohibition does not lie? Shall we abolish writs of error and appeals and *certiorari,* and substitute prohibition? Doubtless it would be very often very convenient when it is thought that a circuit court is going to err, to anticipate it, and by prohibition from the court of last resort direct its steps aright, and such is this case; but such is not the character of our judicial fabric. It would require large amendment to do this. It may be that the grant of this writ would relieve Mr. King from vexatious litigation and delay; but the laws delay is one of the ills that flesh is heir to, and we cannot so signally break down, to suit one instance of inconvenience, the fence dividing prohibition from appeal.

Another reason against granting the writ is that King heretofore, upon a petition setting up substantially the same case as now, except that he had not then made his selection of lands for redemption, was, on full consideration by this Court, denied the writ; but I do not deem it necessary to enlarge upon this feature, as it involves no legal principles necessary to be stated, as indeed this present case does not for like reason really call for an opinion. Therefore we refuse the writ of prohibition.

*Writ Denied.*