*Write awarded.*

STATE *ex rel.* VIRGIE CHARLOTTON, *et al.*

*v.*

J. J. P. O'BRIEN, *Judge, etc., et al.*

(No. 10330)

Submitted January 10, 1951. Decided February 6, 1951.

264

*J. Raymond Gordon,* for relators.

*J. Campbell Palmer, III, A. C. Schiffler, W. F. Keefer,* for respondents.

GIVEN, JUDGE:

Relators Virgie Charlotton, Anna Rutherford, E. L. Stewart, Ray Stewart, Rome Stewart, Hassie Copen, Lizzie Deaver, Ethel Thompson, assignee of Charlie Stewart, and Virginia Douglas, assignee of Harry W. Stewart, on September 26, 1950, filed their petition in this original proceeding in prohibition, praying that the defendant, the Honorable J. J. P. O'Brien, Judge of the Circuit Court of Ohio County, be prohibited from enforcing a certain decree entered in a proceeding consolidating two chancery causes then pending in that court. Karl G. Sailer, assessor and escheator of Ohio County, upon his own petition, was permitted to become a defendant herein. On October 2, 1950, the Court awarded unto relators a rule in prohibition, as prayed for in their petition. Defendants have filed their demurrer and answer to the petition. There exists no dispute as to any question of fact.

One of the chancery causes mentioned was instituted by Karl G. Sailer, Escheator of Ohio County, who sued on behalf of the State of West Virginia, against A. T. Gordon, administrator of the estate of Harry T. Winters, deceased, United States Fidelity & Guaranty Company,

a corporation, and "* * * all unknown persons claiming any interest whatever in the estate, real or personal, of the said Harry T. Winters, deceased, as heirs, legatees or distributees thereof, or otherwise, defendants." The purpose of this suit was to have the property belonging to the estate of Harry T. Winters, after payment of debts and costs of administration, decreed to be escheated to the State of West Virginia.

The other suit mentioned was instituted by relators herein against A. T. Gordon, administrator of the estate of Harry T. Winters, deceased, and the United States Fidelity & Guaranty Company, a corporation, surety on the bond of the administrator. The object of this suit was to obtain a decree compelling the administrator to deliver unto relators, as heirs and next of kin of Winters, all of the property remaining in the estate, after payment of debts and costs of administration.

It appears from the pleadings herein that Harry T. Winters, a resident of Ohio County, died intestate on January 25, 1933. He left an estate of the approximate value of $28,000.00. After payment of debts and costs of administration there remained in the hands of the personal representative approximately $19,500.00, consisting, in part, of real estate situated in Ohio County, West Virginia. The County Court of Ohio County appointed Mutual Savings & Loan Company administrator of the estate. Within thirty days from the time of the demise of Winters certain claimants, including relators or the assignors of relators, hereinafter designated relators, produced certain evidence tending to show that they were the heirs and next of kin of Winters, and moved the county court to annul the appointment of Mutual Savings & Loan Company, which motion was denied. Upon appeal, however, the Circuit Court of Ohio County annulled the appointment made by the county court and on motion of relators appointed A. T. Gordon administrator of the estate. Thereafter the county court duly referred the estate to a commissioner of accounts of Ohio County for settlement.

Numerous claimants, including relators, appeared before the commissioner of accounts and much evidence was produced by them in an effort to establish relationship to Winters. The commissioner of accounts found and reported to the county court that relators had failed to establish any relationship to Winters and the county court, by proper order, affirmed the report. Upon appeal to the Circuit Court of Ohio County by relators the order of the county court was affirmed in that respect, and this Court refused a writ of error to the final order of the circuit court, on June 15, 1936.

Thereafter relators, claiming to be the next of kin of Harry T. Winters, instituted an action of assumpsit in the Circuit Court of Roane County against A. T. Gordon, administrator of the estate of Harry T. Winters, and obtained a judgment for the sum remaining in the estate. The United States Fidelity & Guaranty Company obtained a writ of error from this Court to that judgment and, in reversing the judgment of the Circuit Court of Roane County, this Court held:

> "For the purpose of the prosecution of suits against him an administrator must be considered a resident of the county where he was appointed. That is his official residence regardless of where his home may be located." *Charlotton v. Gordon,* 120 W. Va. 615, 200 S. E. 740.

Thereafter relators obtained a rule in mandamus from this Court, directed to Frank A. McMahon, Commissioner of Accounts of Ohio County, to whom the Winters estate had been referred, requiring him to show cause why he should not make report to the Probate Court of Ohio County concerning the distributees of the estate. The writ was refused, the Court holding:

> "Mandamus does not lie to require a further report from a commissioner of accounts to whom an estate has been referred for settlement concerning which he has made the report required by Code, 44-2-16, there being no showing that the estate has been re-referred to the same commis-

sioner after the filing of the named report." *Gordon* v. *McMahon,* 128 W. Va. 470, 37 S. E. 2d 91.

Later relators instituted an action in the United States District Court for the Southern District of West Virginia against the administrator of the Winters estate, his surety, and others, for the purpose of compelling the administrator to deliver unto relators the remaining portion of the estate. This action was dismissed by the Court on motion of the escheator of Ohio County on the ground that the Court had no jurisdiction, there existing no diversity of citizenship as to necessary parties.

The first question facing the Court relates to the jurisdiction of Ohio County to entertain the suit brought on behalf of the State of West Virginia by the escheator of Ohio County, the purpose of which was to have the estate of Winters decreed escheated to the State. Relators contend that only the Circuit Court of Kanawha County, wherein the seat of the State government is located, has jurisdiction of such a suit, for the reason that venue of such a suit is placed exclusively in that court by the statute.

Code, 42-2-2, reads: "To the State shall accrue all the personal estate of every decedent, of which there may be no other distributee." Code, 37-2-1, reads: "Whenever any person shall die intestate and without any heir or next of kin, owning real estate or personal property within this State, the title of such deceased person therein shall escheat to the State." Code, 37-2-4, provides that "The assessor of each county shall by virtue of his office be the escheator of such county." Section 5 of the same article requires the escheator to make an annual report to "the commissioner of school lands" of all lands in his county escheated to the State. Chapter 160 of the 1947 Acts of the Legislature, Regular Session, Article 4, Section 8 (11A-4-8, Michie's 1949 Code), requires the escheator to make such a report to the State Auditor. Other provisions of Article 4 of Chapter 11A provide for the sale by the deputy commissioner of forfeited and delin-

quent lands, in compliance with the Constitution of West Virginia.

Code, 34-2, however, contains the only statutory provision relating to recovery of possession by the State of escheated property. Section 1 reads: "The residuum of a decedent's estate, belonging to the State, and any property derelict, or having no rightful owner, may be recovered from any person in possession thereof, by a bill in equity in the name of the State." Section 2 requires that in any such suit "* * * the court shall cause a publication to be made for three months in some newspaper printed in the county in which the seat of government may be, * * *." Section 3 requires the court, where no person appears to show title in himself, to "* * * decree the residuum or other property to the State, and enforce the collection thereof, or of the proceeds of the sale of such property." It may be noted that none of these statutory provisions expressly provides that such a suit be prosecuted in any certain jurisdiction, although Section 2 requires that the notice provided for be published for three months in the county wherein the seat of government may be. Such notice was so published in the suit instituted on behalf of the State and also published in Ohio County. Our general venue statute, Code, 56-1-1, in so far as may be applicable, reads:

"Venue in General.—Any action or other proceeding at law or suit in equity, except where it is otherwise specially provided, may hereafter be brought in the circuit court of any county:

"(a) Wherein any of the defendants may reside, * * *.

"* * *.

"(c) If it be to recover land or subject it to a debt, wherein such land or any part thereof may be; or

"* * *.

"(f) If it be on behalf of the State in the name of the attorney general or otherwise, wherein the seat of government is; * * *."

Apparently the only two cases of this Court consider-ing the statutory provisions relating to escheat of prop-erty to the State are *Wilder* v. *Transit Co.*, 120 W. Va. 319, 197 S. E. 814, 117 A. L. R. 948; and *State* v. *Insurance Co.*, 114 W. Va. 109, 170 S. E. 909, 91 A. L. R. 1482. Each of these cases arose from Kanawha County and the ques-tions decided therein relating to escheat were incidental to other questions, jurisdiction of the court not being involved.

Mr. Justice Gray, in *Hamilton* v. *Brown,* 161 U. S. 256, 16 S. Ct. 585, 40 L. ed. 691, had this to say concerning es-cheated land:

"By the law of England, before the Declaration of Inde-pendence, the lands of a man dying intestate and with-out lawful heirs reverted by escheat to the King as the sovereign lord; but the King's title was not complete without an actual entry upon the land, or judicial pro-ceedings to ascertain the want of heirs and devisees. *Atty. Gen. of Ontario* v. *Mercer,* L. R. 8 App. Cas. 767, 772; 2 Bl. Com. 245. The usual form of proceeding for this purpose was by an inquisition or inquest of office before a jury, which was had upon a commission out of the court of chancery, but was really a proceeding at common law; and, if it resulted in favor of the King, then, by virtue of ancient statutes, any one claiming title in the lands might, by leave of that court, file a traverse, in the nature of a plea or defense to the King's claim, and not in the na-ture of an original suit. Lord Somers, in *The Bankers' Case,* 14 How. St. Tr. 1, 83; *Ex parte Webster,* 6 Ves. Jr. 809; *Ex parte Gwydir,* 4 Madd. 281; *Re Parry,* L. R. 2 Eq. 95; *People* v. *Cutting,* 3 Johns. 1; *Briggs* v. *The Upper Cedar Point,* 11 Allen, 157, 172. The inquest of office was a proceeding *in rem;* when there was a proper office found for the King, that was notice to all persons who had claims to come in and assert them; and, until so traversed, it was conclusive in the King's favor. Bayley, J., in *Doe, Hayne,* v. *Redfern,* 12 East, 96, 103; 16 Vin. Abr. 86, pl. 1.

"In this country, when the title to land fails for want

of heirs and devisees, it escheats to the state as part of its common ownership, either by mere operation of law, or upon an inquest of office, according to the law of the particular state. 4 Kent, Com. 424; 3 Washb. Real Prop. (4th ed.) 47, 48."

As will be noted, no statute specifically designates venue of escheat proceedings brought pursuant to Code, 34-2. Prior to the adoption of the 1931 Code the statutory provisions relating to escheat proceedings were found in Chapter 69 of Barnes 1923 Code. By provisions contained in that chapter venue of proceedings for sale of escheated lands was placed in the circuit court of the county wherein the land was situated. The Revisers' Note affixed to Code, 37-2, points out that the provision contained in Chapter 69 of the 1923 Code relating to sale of escheated land was "omitted as inconsistent with §4, Article 13, Const.". The provision contained in the 1931 Code requiring publication "to be made for three months in some newspaper printed in the county in which the seat of government may be" was contained in the prior code, notwithstanding venue of suits for the sale of escheated lands was placed in the circuit court of the county wherein the land was situated. We think, therefore, that relators' contention that the provision requiring publication to be in the county wherein the seat of government may be necessarily implies that venue of such suits must be in the circuit court of that county, is without substantial merit. Moreover, Code, 37-2-4, makes the assessor of each county the escheator of that county and it would necessarily seem to follow that any proceeding by an escheator should be in his own county.

Relators contend further, however, that under Code, 56-1-1, quoted above, all such suits prosecuted on behalf of the State must be prosecuted in the county wherein the seat of government is located. They construe the word "may" contained in the first clause of that section to mean "shall" and say that all actions brought "on behalf of the State in the name of the Attorney General or otherwise, * * *," shall be prosecuted only in the

county wherein the seat of government is located. We think no such meaning can be given to the statute. Relators overlook important provisions of the section to the effect that proceedings may be prosecuted in any county "(a) Wherein any of the defendants may reside, * * *"; and "(c) If it be to recover land or subject it to a debt," in the county "wherein such land or any part thereof may be". As pointed out above, part of the property in controversy is real estate, situated in Ohio County. Moreover, this Court specifically held, in *Charlotton* v. *Gordon, supra,* that the only county wherein the administrator of the estate of Harry T. Winters could be sued was Ohio County.

Relators rely upon the case of *State ex rel. Chafin* v. *Hudson,* 97 W. Va. 679, 125 S. E. 813, which was an original proceeding in prohibition. The purpose of the proceeding was to prohibit the Judge of the Circuit Court of Kanawha County from proceeding in a chancery cause pending therein, the chancery cause being purely an injunction proceeding. The purpose of the injunction proceeding was to have certain officers and individuals of Logan County restrained from doing certain acts in that county alleged to be illegal and which deprived the citizens of that county "of the inalienable right of the peaceful pursuit of business, happiness and of their personal safety." The Attorney General contended that all proceedings prosecuted on behalf of the State had to be prosecuted in the county wherein the seat of government was located, relying upon the same statutory provision, then Section 1 of Chapter 123 of Barnes 1923 Code. This Court held that the Circuit Court of Kanawha County did not have jurisdiction in the injunction proceeding, for the reason that Section 4 of Chapter 133 of the 1923 Code, now Code, 53-5-3, provided that "Jurisdiction of a bill for an injunction to any judgment, act or proceeding, shall, * * * be in the circuit court of the county in which the judgment is rendered, or the act or proceeding is to be done, or is doing, or is apprehended * * *." In that opinion it is pointed out that the State,

like ordinary suitors when invoking aid of the courts, must conform to statutory provisions relating to venue. The applicable venue statute requires the State to prosecute the escheat proceeding in Ohio County, where the administrator resided, as determined in *Charlotton* v. *Gordon, supra,* and in which the real estate involved is situated. This result is clearly indicated by the provisions of the statute making the assessor of each county escheator for his county. We could hardly presume that the Legislature intended to require the fifty-five escheators to go to the seat of government to prosecute escheat proceedings. Had the Legislature intended that all such proceedings be prosecuted in the county wherein the seat of government should be located, it would undoubtedly have fixed the duties, now imposed upon the fifty-five escheators, in one person and expressly required the performance of such duties at the seat of government.

We have not discussed the applicability of Code, 56-1-2, for the reason that we are of the opinion that the statutory provisions quoted clearly fixed the venue of the escheat suit in the Circuit Court of Ohio County.

Relators further complain of the action of the Circuit Court of Ohio County in the consolidated proceeding in decreeing "That the ruling of the Circuit Court of Ohio County on appeal from the County Court of Ohio County with respect to the appointment of an administrator for the estate of Harry T. Winters, deceased, wherein the court held that the persons then claiming to be the heirs of Harry T. Winters and distributees of his estate were entitled to name the administrator, was not intended to be, and was not, an adjudication of the fact of relationship of any of the said parties to the said Harry T. Winters, deceased, nor that they were, nor that any of them was, heir-at-law of Harry T. Winters, deceased, or distributees of his estate"; that the judgment of the circuit court constituted an adjudication of the rights of relators in and to said estate; and in decreeing that the remainder of said estate, after payment of debts and costs of administration, had escheated to the State.

It is clear, however, that since the circuit court had jurisdiction of the cause of action and of the parties, such actions complained of by relators could be attacked only by way of writ of error and not upon prohibition. This Court has consistently held that prohibition will not lie to correct errors, or be allowed to usurp the functions of the writ of error or the remedy of appeal. *McConiha* v. *Guthrie*, 21 W. Va. 134; *Johnston* v. *Hunter*, 50 W. Va. 52, 40 S. E. 448; *King* v. *Doolittle*, 51 W. Va. 91, 41 S. E. 145; *Pennsylvania Railroad Company* v. *Rogers*, 52 W. Va. 450, 44 S. E. 300, 62 L. R. A. 178; *Knight* v. *Zahnhiser*, 53 W. Va. 370, 44 S. E. 778; *Kennedy* v. *Holt*, 67 W. Va. 118, 67 S. E. 379; *State* v. *Morris*, 111 W. Va. 347, 161 S. E. 576; *Wolfe* v. *Shaw*, 113 W. Va. 735, 169 S. E. 325; *Village of Barboursville* v. *Hereford*, 133 W. Va. 375, 56 S. E. 2d 206.

Defendants contend that the judgment of the county court, the judgment of the circuit court affirming the same, and the action of this Court in refusing a writ of error to the judgment of the circuit court, on June 15, 1936, constituted a final adjudication of the rights of relators in or to the estate of Winters and that relators now have no interest in the subject matter entitling them to be heard. Relators would avoid the force of this position by saying that a county court does not have jurisdiction to hear and determine a controversy as to who are heirs or legal distributees of an estate and that, therefore, the judgment of the county court and of the circuit court are void. They rely upon such cases as *In Re: Long Estate*, 122 W. Va. 473, 10 S. E. 2d 791; *Steber* v. *Combs*, 121 W. Va. 509, 5 S. E. 2d 420; and *Hawley* v. *Falland*, 118 W. Va. 59, 188 S. E. 759. The question involved in the *Long Estate* case concerned the title to property claimed to have been wrongfully appraised as part of the estate, the *Steber* case involved the construction of a contract made by distributees of an estate, and the *Hawley* case involved the enforcement of a lien against the distributees of an estate. Each of these matters was of a "judicial nature" as that term is used in Section 24 of Article VIII of the State Constitution, and therefore, without the jurisdiction

of the county court unless within the meaning of the provision of that section of the Constitution stating that county courts "* * * shall have jurisdiction in all matters of probate, the appointment and qualification of personal representatives, guardians, committees, curators, and the settlement of their accounts, * * *".

Code, 44-2-1, provides that after the appointment of a personal representative of the estate of a decedent the estate be referred to a commissioner of accounts "* * * for proof and determination of debts and claims, establishment of their priority, determination of the amount of the respective shares of the legatees and distributees, and any other matter necessary and proper for the settlement of the estate: * * *". Code, 44-2-19, requires that a hearing by the county court be had upon the report of the commissioner of accounts and provides that "* * * After the report of the commissioner on the claims against the estate of any decedent has been confirmed by the county court, or the circuit court on appeal, or corrected and confirmed after appeal, the same shall be forever binding and final." If any doubt could have existed previously as to the finality of a judgment of a county court in a matter of which that court has jurisdiction, this provision would clearly have resolved the doubt.

In *Ritchie v. Armentrout,* 124 W. Va. 399, 20 S. E. 2d 474, this Court held:

> "The order of a county court confirming a report of a commissioner of accounts, regularly made, by which a claim against the estate of a decedent referred to him is disallowed, if not appealed from, is a bar to a motion for judgment by the claimant subsequently made on the same cause of action in a circuit court." Point 2, syllabus.

In the opinion in this case the Court, in considering the extent of the jurisdiction of county courts, as indicated by the provisions of Section 24, Article VIII of the Constitution, quoted in part above, stated:

"While the term 'probate' in some connections may be limited in meaning to the steps involved in the proving of a will, it more often is understood to include all the ordinary steps and incidents usual and necessary for the administration of estates. *Dibble* v. *Winter,* 247 Ill. 243, 93 N. E. 145; *Johnson* v. *Harrison,* 47 Minn. 575, 50 N. W. 923, 28 Am. St. Rep. 382; *Reno* v. *McCully,* 65 Ia. 629, 22 N. W. 902; *In re Miller's Estate,* 216 Pa. 247, 65 A. 681; *In re Guardianship of Strelow,* 116 Neb. 873, 219 N. W. 387; *Chase Nat. Bank* v. *Chicago Title & Trust Co.,* 164 Misc. 508, 299 N. Y. S. 926; *In re Cloward's Estate,* 95 Utah 453, 82 P. 2d 336, 119 A. L. R. 123. Also, the 'settlement of the accounts' of a fiduciary is often, if not usually, held to include the determination of claims against the estate involved. 24 C. J., p. 924; 15 C. J., p. 1010. This theory was apparently adopted by this Court in *Stone* v. *Simmons,* 56 W. Va. 88, 48 S. E. 841, in which it is said: 'In the State of West Virginia the county courts, and the clerks thereof, in vacation, have exclusive original jurisdiction in all probate matters involving the probate of wills and the ordinary administrative proceedings involved in the administration of estates.' In *Page* v. *Huddleston,* 98 W. Va. 104, 126 S. E. 579, this Court said: 'By reason of Section 24, Article 8 of the Constitution of West Virginia, and the statutes enacted in pursuance thereto, county courts have original jurisdiction in all matters of probate, the appointment and qualification of personal representatives and the settlement of their accounts, and * * * all such matters, shall in the first instance be adjudicated in the county court.' "

This Court, in the case of *In Re: J. M. Boggs Estate,* 135 W. Va. 288, 63 S. E. 2d 497, decided this term, held that the county court "had jurisdiction to adjudicate the alleged advancements" which decedent had made to his children. In the opinion the Court reviewed its decisions relating to the powers of county courts under Section 24, Article VIII of the State Constitution, and we deem it unnecessary to do so here.

Jurisdiction as to settlement of the accounts of personal

representatives is specifically placed in the county courts by the quoted provisions of the Constitution. We think of no method whereby there could be a settlement of the accounts of an administrator without first a determination of the parties entitled to participate therein. This would necessarily require an adjudication as to who are the distributees of an estate, except possibly as to an insolvent estate. Without such determination there could be no settlement of an estate. We believe that the power to determine that question is necessarily placed in the county court by the grant of the power to make "settlement" of estates.

We conclude, therefore, that the County Court of Ohio County did have jurisdiction in the proceeding then pending before it to settle the estate of Harry T. Winters, to find and adjudicate that relators in the instant proceeding were not heirs of Harry T. Winters or distributees of his estate. This being true, the circuit court of that county on appeal also had jurisdiction of the matter. Code, 44-2-19. The orders of the county court and of the circuit court having become final, any claim of relators, or either of them, as heirs or next of kin of Harry T. Winters, has been finally determined and adjudicated, and they no longer have any claim or interest in the estate entitling them to be heard in any proceeding.

For the foregoing reasons the writ of prohibition is refused, and the Rule heretofore awarded herein discharged.

*Writ refused;*
*rule discharged.*