# Wytheville

## W. L. TURNER V. W. R. HICKS.

June 13, 1935.

Present, All the Justices.

The opinion states the case.

*Overbey & Overbey,* for the appellant.

*Hugh T. Williams* and *Langhorne Jones,* for the appellee.

HUDGINS, J., delivered the opinion of the court.

W. L. Turner, trading as the Danville-Lynchburg Motor Express, obtained from the Corporation Commission a franchise to operate a motor vehicle freight line over State highway No. 14 between Danville, Lynchburg and intermediate points. W. R. Hicks obtained from the Motor Vehicle Commissioner a for-hire tag, giving him the right, with certain statutory restrictions, to operate his motor vehicle on the streets and highways within the Commonwealth. W. L. Turner, trading as aforesaid, filed a bill in the Circuit Court of Pittsylvania county alleging that W. R. Hicks was operating on a regular schedule and soliciting and receiving patronage along the route between Lynchburg and Danville, in competition with him, without having obtained a certificate so to do from the State Corporation Commission. The answer admitted that Hicks had not received such a franchise from the Commission, but denied the other material allegations and challenged the jurisdiction of a court of equity to hear and determine the matter. A temporary injunction was awarded, which on a final hearing was dissolved. From a decree dismissing the case, complainant sought and obtained this appeal.

Appellee moved to dismiss the appeal as improvidently awarded on the ground that:

"The gist of the appellant's contention for an injunction is that the appellee has violated a law which, in itself, provides for a penalty for its violation. See page 7 of the record in this case:

" 'W. R. Hicks has not only violated the spirit of the law but has violated the letter of the same.'

"That is the only complaint registered by the appellant and furnishes the sole ground for relief advocated."

The bill alleged that appellee had been tried and convicted for violating section 33 (c) of chapter 342, Acts of 1932; that notwithstanding this fact, he had continued to regularly transport property for hire over the same route between Danville, Lynchburg and intermediate points, in direct competition with complainant, thereby unlawfully making daily encroachments upon complainant's franchise rights, and if not enjoined, complainant would suffer irreparable loss and damage.

"It is true that courts of equity will not restrain an act merely because it is a violation of a criminal statute or of a penal ordinance of a city; yet, where such violation results, as in the instant case, in special damages to property rights, which it would be difficult or impossible to ascertain, equity, in order to prevent a multiplicity of prosecutions, the legal remedy being inadequate, will grant complete relief by injunction." *Long's Baggage Transfer Co.* v. *Burford,* 144 Va. 339, 132 S. E. 355, 359.

The case of *Drummond* v. *Rowe,* 155 Va. 725, 156 S. E. 442, the only authority cited by appellee in support of his contention, is in full accord with the principles stated in the above quotation. It is conceded that until the Corporation Commission shall decide otherwise, appellant has an exclusive franchise right to transport property for hire by motor vehicle, on a regular schedule, over State highway No. 14, between the points named, and that appellee is regularly operating over that route, between the same points but not on a fixed schedule.

The question presented is, whether such competition is permitted by statute. Under the facts stated, equity has jurisdiction to determine the respective rights of the parties, even though the act complained of may be a violation of the criminal law.

In the oral argument, it was stated that the Corporation

Commission had exclusive jurisdiction to settle controversies of this nature, and for that reason the appeal should be dismissed. In reply to a question from the bench, counsel for appellee said that he relied upon section 10 of chapter 359 of the 1932 Acts to support his contention. This section reads thus: "The commission upon due hearing shall have power to determine whether any vehicle used for the transportation of persons or property for compensation over the highways of this State is a motor vehicle carrier within the meaning of this act."

This chapter and chapter 360 of the same acts define the term "motor vehicle carrier," and as defined place such carriers exclusively under the regulation and supervision of the Corporation Commission. There is a marked distinction between the rules and regulations governing the motor vehicle carriers, as defined, and carriers who obtain from the Motor Vehicle Commission for-hire tags. The amount and method of taxation are altogether different, as later pointed out in this opinion. One of the evident reasons for enacting section 10 was to give the Corporation Commission power to decide the question as between the Commonwealth and the citizen. Other sections in the chapter give the Commission wide discretionary power to grant or deny a certificate of public necessity or convenience; for cause, it may suspend or revoke the certificate after it is granted, and in certain cases it may impose a fine not exceeding $500, to be collected by civil process issued by the Commission. Section 11 provides that any person violating any provision of the act, or any rule or regulation authorized and duly adopted by the Commission shall be guilty of a misdemeanor. Surely no one would contend that the Commission is authorized by the provision quoted to try a person charged with an offense punishable by fine and imprisonment.

The language of section 10 does not purport to give the Commission exclusive jurisdiction to determine whether or not a person is using the highway as a common carrier within the terms of the act. This controversy is between two citizens, both of whom have been given the right to

operate their vehicles within the Commonwealth. Appellant, at the time the suit was instituted, had obtained from the Commission a franchise, or privilege, to operate his vehicle over a definite route, between definite points. Appellee, by virtue of his for-hire tag, was not restricted in the operation of his vehicle to any particular destination, but he was restricted by the statute from unduly competing with appellant between the points designated in the franchise granted him. Appellant contends that appellee, in violation of the statute, is regularly and continually operating his motor vehicle as a common carrier over the route between the points designated, in direct competition with him, and if allowed so to do his valuable franchise right will become worthless.

█ It is a general rule that equity extends its protection not only to actual but to threatened invasion of rights conferred by franchise. "An injunction is proper whether the invasion complained of is by another corporation or person, or by the public, and whether the invasion seeks to destroy the franchise or merely to participate in its exclusive privileges." 32 C. J. page 232.

There is nothing in the act limiting the jurisdiction of the courts to hear and determine the issues raised by the bill and answer. The motion to dismiss the appeal is overruled.

The statute law provides for two types, or classes, of motor vehicle carriers of freight for compensation, to operate upon the highways within the Commonwealth. Those who desire to operate under a regular schedule on a definite route, are required to make application to the Corporation Commission for a certificate of public convenience and necessity. Before this certificate is granted, the Commission must determine: (1) Whether existing transportation service of all kinds is adequate to meet the reasonable public needs; (2) the volume of existing traffic over the route proposed by the applicant; (3) the financial ability of the applicant to furnish such adequate service as will be required; (4) the effect and burden on the public highways

and on the traffic already carried by such highways and bridges; (5) the effect on existing transportation, revenues, and service of all kinds, and whether the granting of such certificate will, or may, seriously impair such existing service. See chapter 359, section 4 (d) of Acts of 1932. The rates, charges and classifications made by such carriers are subject to approval by the Commission, and when established no variations or changes are permitted without the consent of the Commission previously obtained. In addition to the license tax based upon the weight and carrying capacity of the vehicle, such carriers are required to pay a quarterly tax based upon their gross receipts.

This class of motor vehicle carriers is required to file with the Commission an insurance policy or bond with surety, conditioned that the insurer or surety will pay all damages sustained by the shipper or consignee for loss or damage to property entrusted to the carrier, and for injury to persons and damage to property resulting from the negligent operation of any vehicle used by such carrier within the Commonwealth.

The other type or class of motor vehicle carriers of freight for compensation, who hold themselves out for private employment, are only required to apply to the Director of the Division of Motor Vehicles for appropriately designated tags, and to pay the regular license fee charged to operators of vehicles privately owned and operated, plus a tax of one and one-half times the amount of such fee. This seems to be the extent of the supervision and regulation exercised over this class of carriers of freight, except for the following provision: " * * * that they will not operate upon a regular schedule, nor solicit nor receive patronage along the route or between cities, towns or locations served by motor vehicle carriers operated under certificates granted by the State Corporation Commission." See Acts of 1932, chapter 342, section 35 (f), page 639.

When this provision is read in connection with chapters 359, 360 of the 1932 Acts, it becomes reasonably clear that the legislature intended to place under the supervision of

the Corporation Commission all motor vehicles habitually operated upon the highways and used for the transportation of passengers or property for hire outside the limits of cities, towns and incorporated communities. Those operating within the corporate limits of cities and towns who occasionally operate outside said limits on business originating wholly therein are required to obtain a for-hire tag from the Director of the Division of Motor Vehicles, and pay to him the small additional fee required. There are one or two exceptions to this classification which are not pertinent to the case in judgment.

The construction of the act as applied to the transportation of passengers for hire was before this court in the case of *Southside Transportation Co.* v. *Commonwealth,* 157 Va. 699, 161 S. E. 895, 897, where Judge Holt, delivering the opinion, made the following statement: "From this statute and from our decided cases it appears to be the plain policy of the State to protect motor vehicle carriers, in territory already covered by them, from ruinous competition, subject, of course, to the paramount interest of the public."

The duty to supervise and control the operation of motor vehicles over the highways for the transportation of passengers and freight was first imposed on the Corporation Commission in 1923 (see chapter 161 of the Acts of 1923, Ex. Sess.). This act has been amended at each succeeding session of the General Assembly.

By the 1926 amendment (see chapter 551) motor vehicle carriers of freight for hire were divided into two classes, D and E. The Corporation Commission was authorized to grant certificate D, which entitled the holder to operate his vehicles on a regular schedule, over a definite route, but was permitted to make occasional departures from the regular route and schedule. The act further provided:

"The Commission may grant a certificate E for property carrying vehicles to such applicant or applicants holding themselves out for private employment only for the transportation of specific loads or commodities for one person or

firm on a single trip, to or from the city, town or location from which said carrier operates to such other cities, towns or locations over any improved public highway of the State, but who will not operate upon a regular schedule, nor solicit nor receive patronage along the route or between the cities, towns or locations served by a class D carrier."

These restrictions upon the holder of certificate E were clearly intended for the protection of holders of certificate D as common carriers of freight over a definite route. Substantial changes were made in the statute by the provisions of chapter 419 of the Acts of 1930. Persons who had formerly operated under certificate E were not required to apply to the Corporation Commission, but to the Director of the Division of Motor Vehicles, who was authorized to issue permits or for-hire tags "to applicants holding themselves out for private employment only for the transportation of specific loads or commodities for a single employer on a single trip."

The restrictions applying both to motor vehicle carriers of passengers and property for hire were expressed thus: "The Director, Division of Motor Vehicles, may issue appropriately designated tags for passenger transportation to applicants who agree and undertake not to solicit the transportation of persons over the improved public highways and/or between incorporated communities nor to operate upon a regular schedule, nor to receive patronage at intermediate points between their points of origin and destination, but who may be privately employed for a specific trip.

"The Director, Division of Motor Vehicles, may issue appropriately designated tags for property carrying vehicles to applicants holding themselves out for private employment *only for the transportation of specific loads or commodities for a. single employer on a single trip, to or from the city, town, or location, from which said carrier operates to any other city, town or location, over any improved public highway and/or between incorporated communities of the State, or any of the highways, streets and/or alleys of the State,* and who agree that they will not operate upon a regular

schedule, nor solicit nor receive patronage along the route or between cities, towns or locations served by a class C [D] carrier." (Italics supplied.)

The italicized words of the restriction applying to carriers of property were omitted in the 1932 amendment, but when these provisions are read in connection with section 1 (e) of chapter 359, and section 1 (d) of chapter 360 of the same acts, it is apparent that there has been no substantial change in the legislative intent. The above chapters define the term "motor vehicle carrier" as follows: "The term 'motor vehicle carrier' means every corporation or person, their lessees, trustees, or receivers, owning, controlling, operating or managing any motor vehicle used for the transportation of passengers or property for hire as a common carrier over any public highway, and/or between any incorporated communities in this State; provided, however, that the term 'motor vehicle carrier' shall not include motor vehicles engaged exclusively in transporting persons or property solely within the limits of any city or town in this State, nor to any person, firm or corporation operating taxicabs or passenger motor vehicles equipped with taximeters or to taxicabs or passenger motor vehicles without taximeters operated at a flat rate, whose business originates wholly within the corporate limits of any city or town in this State, but who may occasionally operate beyond said limits; provided, further, that the term 'motor vehicle carrier' shall not include public passenger vehicles offered for hire and not conforming to the definition of a taxicab and/ or *property carrying vehicle offered for hire, whose business originates wholly within the corporate limits of any city or town in this State and which are occasionally operated beyond said limits."* (Italics supplied.) Acts 1932, chapter 359, pages 700, 701.

From the foregoing it is clear that a motor vehicle carrier of property for compensation, who receives a for-hire tag from the Director of the Division of Motor Vehicles, is not entitled to solicit or receive patronage along the route, or between cities, towns or locations served by motor

vehicles operating under a certificate granted by the Corporation Commission.

The uncontradicted evidence shows that the form of receipt for freight used by W. R. Hicks stated that it was "a uniform domestic straight bill of lading, adopted by carriers in official southern and western classification territories" and that the property was received for transportation "subject to the classifications and tariffs in effect on the date of the issue of this bill of lading," that he was a bonded carrier and insured his cargo. The following is a part of Hicks' testimony:

"Q. How do you obtain your transfer business?

"A. Most of my business is gotten by people calling me or seeing me on the street, asking me to haul goods for them.

"Q. Do you have an agreed price before you leave Danville or Lynchburg, the places where you have your headquarters?

"A. Only with the exception of ones with whom I have verbal contracts to haul for them.

\*    \*    \*    \*    \*    \*    \*    \*

"Q. Do you ever put off any freight, or any of your load between those points? (Danville and Lynchburg)

"A. I put off stuff that I pick up at Danville between Danville and Lynchburg, and I put off stuff that I pick up in Lynchburg between Danville and Lynchburg.

\*    \*    \*    \*    \*    \*    \*    \*

"Q. It is alleged that you make a daily schedule over route 29 between Lynchburg and Danville, known as State highway No. 14. Do you operate regularly or daily over this route?

"A. No.

"Q. How often do you traverse this route?

"A. Sometimes once a day, sometimes every other day, and sometimes I don't travel this route all the way for a week—I travel only part of it."

The trial court in its decree stated that it was "of the opinion that the defendant, W. R. Hicks, has the right to receive goods in Danville for shipment to Lynchburg or any

point along the route, and discharge the same at such points, provided he does not operate on a regular schedule." This ruling is erroneous.

The users of for-hire tags are not only prohibited from operating on a regular schedule, but they cannot solicit or receive patronage along the route, or between cities, towns or locations served by a motor vehicle carrier operating under a certificate from the Corporation Commission, but for business originating wholly within the corporate limits of a city or town they may occasionally operate beyond these limits over a route served by a holder of a certificate of public convenience and necessity. The evidence clearly shows that Hicks is regularly operating as a common carrier over State highway No. 14 between Danville, Lynchburg and intermediate points, in direct competition with appellant. This the statute expressly prohibits.

For the reasons stated, the decree of the trial court is reversed, and a permanent injunction, in accordance with the prayer of complainant's bill, will be here entered.

*Reversed.*