## Richmond

L. M. WOODFIN ET AL., ETC., T/A WOODFIN BROTHERS V. OVERNITE TRANSPORTATION COMPANY.

June 14, 1957.

Record No. 4650.

Present, All the Justices.

The opinion states the case.

*S. W. Shelton,* for the appellants.

*William M. Blackwell (Oscar L. Shewmake; John C. Goddin,* on brief), for the appellee.

HUDGINS, C. J., delivered the opinion of the court.

Overnite Transportation Company, a common carrier of

freight by motor vehicle, instituted this suit in equity to enjoin Woodfin Brothers, a partnership contract carrier, from actively soliciting and transporting commodities between the cities of Richmond and Danville at a freight rate or charge less than that prescribed by the State Corporation Commission for a common carrier transporting the same commodities between the two cities. The trial court entered a decree sustaining a demurrer to the bill which decree, on appeal to this court, was reversed and the case remanded for a trial on the merits for reasons stated in *Transportation Co. v. Woodfin*, 196 Va. 747, 85 S. E. 2d 217.

On the trial of the case on its merits the lower court held that the evidence for complainant proved the allegations of the bill, and granted an injunction perpetually restraining and enjoining Woodfin Brothers "from transporting any commodity in any territory at a less freight rate or charge than that fixed by the State Corporation Commission for a common carrier for the same commodities in the same territory, and from carrying any goods for hire between the cities of Richmond and Danville, Virginia, at a rate less than that prescribed in the tariffs of Overnite Transportation Company, for transporting the same commodity between any points as herein prescribed." From this injunction order this appeal was awarded Woodfin Brothers, hereinafter designated appellant.

The only question presented is whether the evidence is sufficient to sustain the allegations of the bill of Overnight Transportation Company, hereinafter designated appellee. The allegations material to the question now under consideration are: (1) that appellant "is and has been actively soliciting and carrying commodities between the Cities of Richmond and Danville, Virginia, at a less freight rate or charge than that fixed by the State Corporation Commission of Virginia for your complainant for the same commodities in the same territory;" and (2) that such action on the part of appellant "is causing and has caused great and irreparable harm and damage to your complainant and is in violation of the statutes of the Commonwealth of Virginia for such case made and provided." These and other allegations are fully stated in *Transportation Co. v. Woodfin, supra*.

It thus appears that appellant is charged not only with the commission of one criminal act (violation of Code, § 46-2), but a repeated and continuous commission of the same crime, resulting in "great and irreparable harm and damage" to appellee. These allegations brought the case squarely within the well settled principle that

while equity will not restrain an act merely because it is a violation of a criminal statute, yet, where such violation results in special damages to property rights which it would be difficult or impossible to ascertain, the legal remedy being inadequate, equity will grant complete relief by injunction. *Transportation Co.* v. *Woodfin, supra; Turner* v. *Hicks,* 164 Va. 612, 180 S. E. 543; *Long's Baggage Transfer Co.* v. *Burford,* 144 Va. 339, 132 S. E. 355.

The evidence, submitted on depositions, did not prove that appellant had been actively soliciting and carrying commodities between Richmond and Danville at freight rates less than that fixed by the Corporation Commission for the same commodities in the same area, or that appellee has sustained any damage.

The evidence tends to show that appellant was guilty of only one criminal act, and that was committed under the following circumstances. On June 15, 1952, the State Corporation Commission made a substantial change in the rates fixed for common carriers of paper between Richmond and Danville. On July 9, 1952, appellant had two packages of paper that it had agreed to transport from Richmond to Danville at fifty cents per one hundred pounds. N. F. Smith, Jr., an employee of appellant, by telephone requested appellee to transport the two packages for appellant. Neither of the parties seems to have known the exact rate then in effect for transporting these commodities. Thereupon, Smith, for appellant, wrote appellee the following letter:

"Confirming our conversation regarding our pros no. 2100 and 02, please deliver these shipments collect as billed and billing us for the difference between your applicable rate and our assessed contract rate. Please deliver to consignee on July 10 if at all possible. Thanks. N. F. Smith, Jr., T. M. Woodfin Bros., 2001 Hull St., Phone 82-4911."

Appellee transported the two packages as requested, collected fifty cents per one hundred pounds from the consignee, and collected from appellant $3.45, the difference between fifty cents per one hundred pounds as charged by appellant, and sixty three cents per one hundred pounds, the rate fixed by the Corporation Commission and charged by appellee. This transaction caused appellees no loss or damage, irreparable or otherwise.

The final decree was entered by the trial court on April 6, 1956, nearly four years after appellant had agreed to transport commodities between the two cities named at less compensation than that fixed by the Corporation Commission to be charged by common carriers; yet,

no evidence was introduced tending to prove that, during this interval, appellant had transported or had solicited for transportation any other commodities between the two cities.

Appellee contends that the words "our assessed contract rate" used in the letter of July 9th and the admission of L. M. Woodfin, one of the three partners of Woodfin Brothers, that he did not know the freight rates fixed by the Corporation Commission on transporting different commodities for common carriers, were sufficient to prove that appellant was actually soliciting and continuously transporting property without regard to the tariff rates fixed by the Corporation Commission. This may be a possible inference from this evidence.

However, this inference is repelled by the positive testimony of L. M. Woodfin, who stated that prior to July 1952, the partnership had employed N. F. Smith, Jr., to ascertain the correct freight rates charged by common carriers and to advise the partnership on rates to be charged by it. It also appears from the testimony of this witness that after Smith ceased to be employed by the partnership, appellant obtained the rates fixed by the Corporation Commission for commodities transported by common carriers either from Charlie Taylor, "a Richmond rate Manager," or directly from one of the common carriers that maintained an office in Richmond.

Appellee stated in its bill a proper case for injunctive relief and we so held on the former appeal, but on the trial of the case on the merits it failed to carry the burden of proof that was on it to establish by a preponderance of positive evidence that appellant had repeatedly violated a criminal statute, and had been actively soliciting the transportation of, and transporting commodities at rates less than the rates fixed by law, resulting in special damages to appellee. For this failure of the *probata* to support appellee's *allegata*, we are compelled to reverse the decree awarding the injunction.

The decree of the trial court is reversed and the case dismissed.

*Reversed and dismissed.*