STATE *ex rel.* VALLEY DISTRIBUTORS, INC., *a Corporation, and* RAYMOND KOHN

*v.*

THE HONORABLE HARVEY OAKLEY, *Judge, etc., et al.,* FARRIS D. SAYER, *etc., et al.*

(No. 12794)

Submitted April 22, 1969.          Decided June 10, 1969.

Dissenting Opinion June 24, 1969.

*W. Bernard Smith, Grubb & Wilson, Amos C. Wilson,* for relators.

*Preiser, Greene & Hunt, L. Alvin Hunt,* for respondents.

BROWNING, JUDGE:

Valley Distributors, Inc., and Raymond Kohn, hereinafter sometimes referred to as petitioners, filed their petition invoking the original jurisdiction of this Court on December 16, 1968. The named respondents are the Honorable C. C. Chambers, Judge of the Seventh Judicial Circuit of West Virginia, the Circuit Court of the Seventh Judicial Circuit of West Virginia and Farris D. Sayer, David F. Sayer, Jr., Alex F. Sayer, II, d/b/a Sayer Brothers Department Store and Super S Discount, hereinafter referred to as "Sayers". The petition alleges that the Sayers filed a civil action, No. 3285, in the Circuit Court of Logan County in November, 1966, as shown by petitioner's exhibit "A", seeking injunctive relief against the petitioners herein and others, and, on November 18, 1966, the Circuit Court of Logan County entered an order enjoining petitioners "from continuing their present practice of keeping their place of business open on Sunday in Logan County, West Virginia, for the sale of any items except those specifically permitted by the provisions of Chapter 61, Article 10, Sections 25 and 26 of the Code of West Virginia and the defendants are further enjoined from the sale of any other items of merchandise except in strict conformity with the provisions of said chapter . . ." The petition then alleges that on or about November 26, 1968, respondents initiated a contempt proceeding before the Circuit Court of Logan County and on December 6, 1968, that court found the petitioners in contempt and imposed a fine of $250 upon each of the petitioners and sentenced petitioner Kohn to a term of thirty days in jail, the execution of which was stayed for a period of sixty days in order to permit the petitioners to appeal. Subsequently on or about December 10, petitioners were served with a notice to show cause whether they should not again be adjudged guilty of contempt. The petition then alleges that the injunction awarded in civil action No. 3285 and the subsequent contempt proceedings constituted a usurpation and abuse of

power by the Circuit Court of Logan County and prays for a writ of prohibition prohibiting the Circuit Court of Logan County from enforcing such injunction or taking any other action with respect thereto.

This Court issued a rule to show cause why the writ should not be awarded as prayed for on December 16, 1968, returnable January 8, 1969, at 10:00 a.m. The case was continued from time to time and on motion of the petitioners the Honorable Harvey Oakley, newly elected Judge of the Seventh Judicial Circuit, was substituted as a respondent in place of the Honorable C. C. Chambers on February 11, 1969. Filed with the petition as exhibits are: the complaint in Civil Action No. 3285; the order of November 18, 1966, awarding the injunctive relief prayed for by such complaint; the petition for a citation of contempt filed November 26, 1968, and, the notice of December 10, 1968, requiring petitioners to show cause why they should not again be adjudged in contempt.

Exhibit "A", the complaint, alleges that the Sayers as plaintiffs conduct certain retail businesses in the City of Logan and are business competitors of the petitioners who operate a similar business in Logan County but outside the corporate limits of the City of Logan; that the petitioners caused their place of business to be open for business on October 16, 23, 30 and November 6, 1966, all being the first day of the week commonly known and designated as Sunday, in violation of the laws of the State of West Virginia and particularly Chapter 61, Article 10, Sections 25, 26 and 27 of the Code of West Virginia; that the Sayers also opened for business on Sunday, October 16, but their store was immediately closed by city officials and the manager was arrested and fined; the Sunday openings of the petitioners have not been interfered with by county or state officials in Logan County; certain persons have at various times obtained warrants for the arrest of certain employees of the petitioners for violation of Chapter 61, Article 10, Sections 25 and 27 and hearings were held before a justice of the

peace of Logan County who found all of the accused not guilty; the number of vehicles going to and from petitioners' place of business on Sunday increases traffic hazards which create and constitute a public nuisance; the zeal with which the city officials enforce Chapter 61, Article 10, Section 25 and failure of any enforcement on the part of county or state officials outside the corporate limits of the City of Logan denies to the plaintiffs the equal protection of the laws; the Sayers, being in a competitive business, are being irreparably damaged by the petitioners' Sunday operations; attempts by private individuals to have the law enforced by obtaining warrants would cause multiplicious litigation; and prays that petitioners be enjoined from any activity not specifically permitted by statute.

The respondents answered admitting the substantial averments of the petition and denying that the action of the Circuit Court of Logan County usurps any legislative power or exceeds the jurisdiction of such court to which petitioners demurred. Respondents also filed a motion to dismiss the rule to show cause on the grounds that: prohibition will not lie against the individual respondents; the petition and exhibits clearly show that the order complained of was entered on November 18, 1966, from which no appeal was taken and such order is now final and not subject to attack; various other orders also have been entered in the case from which no appeal was taken, all of which have become final and are not now subject to attack; the relief sought is barred by the doctrine of laches; petitioners have an adequate remedy at law by action against the respondents Sayers; and, petitioners are barred from maintaining this proceeding by their own misconduct and the doctrine of unclean hands. On April 22, 1969, the Honorable C. C. Chambers, who previously was replaced by Harvey Oakley as a party respondent, filed his separate answer in which he denies certain allegations of bias and prejudice against him made in the original petition but which were not incor-

porated in the amended petition substituting Oakley and attaches certain exhibits thereto. We have disregarded as being little more than frivolous the allegations of bias and prejudice against the presiding judge and consider his separate answer a complete refutation of the allegations of the original complaint.

There can be no question but what the Circuit Court of Logan County has jurisdiction by virtue of Article 8, Section 12, of the Constitution of this State of all suits and actions that may arise and specifically "of all cases in equity." Furthermore the injunction complained of having been issued on November 18, 1966, and no appeal having been granted or even sought in this Court it has long since become final unless the decree entered on that date was absolutely void, the time having passed for directly attacking the decree for errors, even gross errors. Thus petitioners in this Court must show that although the trial court had "jurisdiction" it exceeded "its legitimate powers" in the exercise thereof. Article 8, Section 3, of the Constitution of this State, in addition to the appellate jurisdiction therein granted this Court, further provides that "It shall have original jurisdiction in cases of habeas corpus, mandamus, and prohibition." The writers of the Constitution did not attempt to elaborate upon the powers of this Court in prohibition but left that duty and authority to the legislature. Prior to 1882 an examination of the statutes reveals that legislative authority of this Court in prohibition was not much, if any, greater than that of courts having such jurisdiction at the common law. There can be no doubt but what the scope of the writ of prohibition was enlarged by Acts of the Legislature, Regular Session, 1882, the language then adopted having not since been changed in any material manner. This is the language of Code, 53-1-1, as amended: "The writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its

legitimate powers." In what may be considered a land-mark decision following the 1882 amendment this Court held in *N. & W. Ry. Co. v. Pinnacle C. Co.,* 44 W. Va. 574, 30 S. E. 196, that "(1) The writ is no longer a matter of sound discretion but a matter of right; (2) it lies in all proper cases, whether there is other remedy or not." The sixth syllabus point states that in all cases of usurpation and abuse of power, even though the court has "jurisdiction", prohibition "now lies as a matter of right, and not as a matter of sound judicial discretion." The dissenting opinion of President Judge Brannon is interesting indeed. He states, inter alia, "I think this latter clause does not enlarge the scope of the writ, and is only declaratory of the common-law office of the writ." He fervently warned of the danger that the new language of the statute might extend "the writ to every case of mere error." His pertinent opinions as long as he remained upon the bench, whether majority, dissenting or concurring, reveal the same fatidical admonition with never a reference to Article V, Section 1 of the Constitution of this State, the only article therein containing only one section. There is language in opinions of this Court, long after the decision in the *Pinnacle Coal Company* case, to the effect that prohibition is a proper remedy if there is "no adequate or complete remedy in the ordinary course of procedure." However, in the more recent decisions of this Court, the clear and unambiguous language of Code, 53-1-1, as amended, has been acknowledged and followed. The writ lies as a matter of right whenever the inferior court (a) has not jurisdiction or (b) has jurisdiction but exceeds its legitimate powers and it matters not if the aggrieved party has some other remedy adequate or inadequate. This is the second syllabus point in *State ex rel. Road Commission v. Taylor,* 151 W. Va. 535, 153 S. E.2d 531: "Although a court has jurisdiction of the subject matter in controversy and of the parties, if it clearly appears that in the conduct of the case it has exceeded its legitimate powers with respect to some pertinent question a writ of prohibition will lie

to prevent such abuse of power." See also *Rakes* v. *Ferguson*, 147 W. Va. 660, 130 S. E.2d 102, and the extensive citations of authority on pages 667 and 668 of the opinion written by Judge Haymond for the Court. It is interesting to compare the view of this Court with reference to the scope of prohibition prior to and following the amendment of 1882. In *Buskirk* v. *Judge of the Circuit Court*, 7 W. Va. 91, decided on August 22, 1873, the writ of prohibition was denied but nevertheless President Haymond stated the following: "The writs of *habeas corpus, mandamus* and prohibition are highly esteemed and appreciated by the intelligent and patriotic of all free, well regulated governments, and the absence and denial of them, as remedies to the citizen has ever been a source of well founded grief and lamentation by the same class in governments of oppression and despotism."

We come then to a consideration of the precise question presented in this case and that is, assuming the general jurisdiction of the court and a record clearly showing no appeal from the decree of November 18, 1966, did the Circuit Court of Logan County by the entry of the order enjoining the defendants from violating the pertinent statutory provisions heretofore quoted so exceed "its legitimate powers" that such order was absolutely void. It was not enough, of course, that the trial judge committed error, however gross or grievous, for such errors cannot be reached in prohibition. This Court has held in many decisions that if an order of an inferior court is void it may be, at any time and in any court having jurisdiction, attacked directly or collaterally. The cases in which a collateral attack in habeas corpus upon the judgment of a trial court has been sanctioned are legion. It is, we believe, useless to cite authority in that regard other than that which has already been cited in this opinion.

Sections 25, 26, 27, 28 and 29 of Article 10, Chapter 61, Code, 1931, as amended by Chapter 12, Acts of the Legis-

lature, Regular Session, 1964, the Sunday Closing Law, making it unlawful to engage in certain activities on a Sunday and providing penalties therefor is unquestionably a criminal statute, the constitutionality of which has been upheld by this Court. *State ex rel. Heck's* v. *Gates, et al.,* 149 W. Va. 421, 141 S. E.2d 369. Also, it cannot be denied, if the allegations of the complaint in Civil Action No. 3285, petitioners' Exhibit "A", be taken as true, that the petitioners were guilty of a violation of that statute. Nevertheless, the general rule applicable to the instant case is set out in 43 C. J. S., Injunctions, § 150 and reads as follows: "Except where there is express statutory authority therefor, equity has no criminal jurisdiction, and acts or omissions will not be enjoined merely on the ground that they constitute a violation of law and are punishable as crimes. Under ordinary circumstances a complete and adequate remedy for the violation of the criminal statutes of a state and of municipal ordinances is afforded by the courts of law; and, if a criminal prosecution will constitute an effectual protection against the acts or omissions complained of, no grounds exist for relief by injunction. The objections to 'criminal equity' are that it deprives defendant of his jury trial; that it deprives him of the protection of the higher burden of proof required in criminal prosecutions; that, after imprisonment and fine for violation of an equity injunction, defendant may be subjected under the criminal law to punishment for the same acts; that it substitutes for the definite penalties fixed by the legislature whatever punishment for contempt a particular judge may see fit to exact; that it is often no more than an attempt to overcome by circumvention the supposed shortcomings of jurors; and that it may result, or induce the public to believe that it results, in the arbitrary exercise of power and in government by injunction. The possibility that many persons will violate the law and that many suits will be required to enforce it, *the mere fact that the officers charged with the duty of enforcing the provisions of the criminal law neglect or refuse to perform their*

*duty in this regard,* the failure of local juries to convict, or the fact that the punishment for the crime is inadequate does not warrant relief by injunction." (Emphasis added.) There are scores of cases from many jurisdictions cited in the footnotes in support of those general statements of the law applicable to this question. It is true that many courts have held that where an injunction is necessary for the protection of public or property rights the criminality of the acts complained of does not bar the remedy by injunction and the appellees have very ably argued that that principle is applicable here inasmuch as their clients are not permitted to keep their place of business open on Sundays whereas the "appellants herein are permitted to do so." In *State* v. *Ehrlick,* 65 W. Va. 700, 64 S. E. 935, this Court held in point five of the syllabus that: "If a charge is of a criminal nature, or an offense against the public, and does not touch the enjoyment of property, or health, it is not within the jurisdiction of a court of equity." The Court further held in that case that if an injunction was necessary for the protection of such rights the criminality of the injurious act does not bar the remedy in equity. That case dealt with an alleged public nuisance and, of course, the cases are legion in this jurisdiction and elsewhere wherein injunctions to abate purprestures and other public nuisances have been granted. Neither the allegations of the complaint nor the evidence in the case shows that the appellants are maintaining a public nuisance of any kind. Apparently the primary complaint is that the Sunday closing law is enforced with great diligence on the eastern bank of the Guyandotte River, and particularly within the corporate limits of the City of Logan, whereas on the western bank of the Guyandotte the officers of the law do not pursue their duties with nearly so much pertinaciousness. Furthermore, a careful examination of the provisions of this statute, the pleadings and the evidence, leads this Court to conclude that the remedy at law is entirely adequate without resorting to a court of equity. The penalty for a first offense is a fine of not less than

$25 nor more than $100; the penalty for a second offense is a fine of not less than $250 nor more than $500 and, in the discretion of the court, confinement in jail not exceeding thirty days and the penalty for a third violation is a fine of not less than $500 nor more than $1,000 and, in the discretion of the court, confinement in jail not exceeding six months. If convictions do not come readily, as appellees allege, in the justice of the peace courts a grand jury regularly sits in the Circuit Court of Logan County and we must presume that the prosecuting attorney and other state and county officials perform their duties as provided by law.

We hold that the judgment of November 18, 1966, of the Circuit Court of Logan County was void in that that court, in granting the injunction herein, clearly exceeded its legitimate powers and therefore the writ of prohibition will issue prohibiting the respondent judge of the Circuit Court of Logan County from enforcing such order now or hereafter.

*Writ awarded.*

CALHOUN, JUDGE, dissenting:

Respectfully, I dissent from the Court's decision in this case. The reasons for my disagreement were stated with supporting legal authorities in considerable detail in my dissenting opinion in *Aldrich* v. *Aldrich,* 147 W. Va. 269, 285, 127 S. E.2d 385, 394.

Basically my dissent in this case is based upon my contention that the Circuit Court of Logan County is a constitutional court of general jurisdiction, including jurisdiction to award injunctions; that jurisdiction in a court includes jurisdiction to decide incorrectly as well as to decide correctly; that mere errors of law committed by a court in the exercise of its jurisdiction can be corrected only by direct proceedings such as by appeal; that whether the trial court erred in granting the injunction in this case is by no means clear from a legal standpoint, but, at most, it was a mere error in construing and applying legal principles in the exercise of its admitted

general jurisdiction; that the trial court's action in awarding the injunction has become final by the failure to prosecute a timely appeal; and the judgment of the trial court having become a finality in this respect, its validity cannot be legally assailed either in that court, in this Court, or in any other court of the United States, unless it be established that the trial court's judgment was procured by fraud. The contentions thus made in my dissenting opinion were, I believe, fully sustained on appeal. *Aldrich* v. *Aldrich,* 378 U. S. 540. Comments on the *Aldrich* case appear in 65 W. Va. L. Rev. 89 and 68 W. Va. L. Rev. 103.

Authorities cited in my dissenting opinion in the *Aldrich* case in support of my contentions stated above in this opinion included *St. Lawrence Co.* v. *Holt and Mathews,* 51 W. Va. 352, pt. 1 syl., 41 S. E. 351; *Stewart* v. *Tennant,* 52 W. Va. 559, pt. 8 syl., 44 S. E. 223; *Blankenship* v. *Mongini,* 105 W. Va. 530, pt. 2 syl., 143 S. E. 301; *Adkins* v. *Adkins,* 142 W. Va. 646, 97 S. E.2d 789 (in which case quite numerous cases are cited and discussed); 21 C. J. S., Courts, Section 27, pages 38-39; 11 M. J., Jurisdiction, Section 10, page 436-37. See also *Pyles* v. *Boles,* 148 W. Va. 465, pt. 12 syl., 135 S. E.2d 692. The following language is included in a statement of the general rule in 20 Am. Jur. 2d, Courts, Section 90, page 451: "The distinction between lack of jurisdiction and any other error affecting a decision of a court is of practical importance in that where a court has jurisdiction, a wrong decision is not void, and therefore not subject to collateral attack. Similarly, *writs such as prohibition* and habeas corpus may be available *only* where a court has *acted without jurisdiction,* and not on the ground that it acted erroneously." (Italics supplied.) Following is the first point of the syllabus of *St. Lawrence Co.* v. *Holt and Mathews,* 51 W. Va. 352, 41 S. E. 351: "An adjudication that a particular case is of equitable jurisdiction is not void, even if erroneous and cannot be disturbed by a collateral attack." I believe additional au-

thorities to the same effect, almost without limit in number, could be cited to sustain that which I consider very fundamental and important principles of law.

The *Aldrich* case, to which reference was made in the early portion of this dissenting opinion, involved a suit for divorce previously instituted by a wife against her husband in the Circuit Court of Dade County, Florida. The parties, though subsequently divorced, for the sake of convenience may be referred to hereafter in this opinion as the wife and the husband. The Florida court granted a divorce to the wife and directed the husband to pay alimony to her at the rate of $250 a month, which amount was subsequently reduced by court order. The divorce decree further provided that if the husband should predecease the wife, the alimony would continue to be effective and would become a charge upon his estate during her lifetime. The husband predeceased the wife while he was a resident of Putnam County, West Virginia. Thereafter she instituted a civil action in the Circuit Court of Putnam County against the estate of her former husband to recover the aggregate sum of the monthly alimony installments which accrued from the date of the death of the husband to the date of the institution of the action. The plaintiff appealed to this Court from an adverse judgment of the Circuit Court of Putnam County.

On the appeal to this Court, the primary question for decision was whether the Florida judgment was a valid judgment such as to be entitled to full faith and credit by courts of this state under Article IV, Section 1 of the Constitution of the United States. This Court, after reviewing the statutes and pertinent court decisions of the State of Florida, stated in the tenth point of the syllabus: "* * * but, in the absence of any agreement between the parties, that court *did not have jurisdiction* to award alimony to extend beyond the death of the husband and to make such alimony a charge against his estate. For that reason the judgment awarding such alimony *was void and of no force and effect* under the law of the State

of Florida and will not be given full faith and credit in the courts of this state." (Italics supplied.)

From the decision of this Court, a writ of certiorari was granted by the Supreme Court of the United States, which, pursuant to a Florida statute, certified certain questions to the Supreme Court of Florida.

After ably discussing in considerable detail the questions certified to it for decision, the Supreme Court of Florida summarized its decision as follows: "In summary, it is our opinion that the Circuit Court of Dade County in 1945 had 'subject matter' jurisdiction of the cause and that, in exercising such jurisdiction, its decision as to alimony after the death of the husband was *erroneous*. It is our further view, however, that when the husband failed to take an appeal and give a reviewing court the opportunity to correct the error, the decree of the Circuit Court on such question *passed into verity,* became final, and is not now subject to collateral attack. * * *." (Italics supplied.) *Aldrich* v. *Aldrich,* 163 So. 2d 276, 284 (Fla. 1964).

In its ultimate decision involving the correctness of the decision of this Court, the Supreme Court of the United States concluded its opinion as follows: "The judgment below is reversed, and the case remanded for proceedings not inconsistent with this opinion." *Aldrich* v. *Aldrich,* 378 U. S. 540.

The writ of prohibition, as the term implies, is prohibitive in character. In this case it is not being used in a prohibitive sense or manner. Rather it is being used to nullify an action which has previously been taken by the trial court and which, in the circumstances, has become an unassailable finality. This Court is taking an action which the trial court itself could not take. The writ in this case is being used as a belated substitute for appellate procedure.

"The writ of prohibition is purely jurisdictional and will not lie to correct errors or be allowed to usurp the

functions of a writ of error or *certiorari,* or of the remedy by appeal." *Johnston* v. *Hunter,* 50 W. Va. 52, pt. 1 syl., 40 S. E. 448. To the same effect see *State ex rel. Cecil* v. *Knapp,* 143 W. Va. 896, 912, 105 S. E.2d 569, 578-79, and other cases there cited. If the trial court in this case exceeded its legitimate powers in the exercise of its admitted jurisdiction, it did so years ago. In *State ex rel. Charlotton* v. *O'Brien,* 135 W. Va. 263, 63 S. E.2d 512, this Court held that prohibition would not lie where the lower court acted in a case in which it had jurisdiction and its alleged errors in the exercise of that jurisdiction could not be examined, corrected or nullified by this Court after the lower court's judgment became final.

The majority opinion states that the Sunday Closing Law here in question "is unquestionably a criminal statute". I question whether this is a "criminal statute" within the meaning and intent of the principles applied in this case. Certainly the incidental penal aspects of the statute create an offense which is merely malum prohibitum rather than malum in se. The statute contains a provision for local option, so that it is operative in some counties and not in other counties of the state. A "criminal statute" enacted by the legislature is normally statewide in scope and operation. Section 27 of the statute provides: "The penalties imposed by this section shall not be incurred by any person who conscientiously believes that Saturday ought to be observed as a Sabbath, * * *." Hence the penal portion of the statute does not apply alike to all citizens of the state. The constitutionality of the Sunday Closing Law was upheld unanimously in *State ex rel. Heck's, Inc.* v. *Gates,* 149 W. Va. 421, 141 S. E.2d 369. In that case the Court stated (149 W. Va. 437, 141 S. E.2d 381): "The principle has long been recognized in this State that a Sunday Closing Law, enacted under the police power of the State, for the purpose of providing a day of rest for persons and to prevent the physical and moral disadvantages which result from uninterrupted labor is not a religious statute * * *."

It is true that, as a general rule, violation of criminal laws will not be enjoined, but to that general rule there are well established exceptions. 43 C. J. S., Injunctions, Sections 150-155, inclusive. A general rule is summarized in 43 C. J. S., Injunctions, Section 151, page 762, as follows: "Injunction will issue to inhibit a criminal act when that act invades civil or property rights and where there is no other adequate remedy available." The following statement of the general rule appears in 42 Am. Jur. 2d, Injunctions, Section 161, page 923: "It is in the prevention of invasion or destruction of, or injury to, property or property rights that the remedy by injunction is generally granted, and it is no obstacle to injunctive relief in such cases that the acts complained of may be of a criminal character." The following appears in 42 Am. Jur. 2d, Injunctions, Section 167, pages 933-34:

> "In application of the principle that equity will interfere by injunction to prevent the commission of acts, even though they are criminal or penal, which injuriously affect the complainant's property rights or interests, equity will, in a proper case, restrain the use of criminal means or practices in business or trade competition. Injunctive relief in such cases is predicated upon the right of an individual or a corporation to carry on a business or exercise a franchise without the competition of illegal and criminal acts. Where injury to the property rights of a rival or competitor results from such acts, he is not required to suffer successive inflictions until a criminal prosecution is launched, but may proceed at once to remedy the wrong by injunction. And it cannot be said that in affording preventive relief under such circumstances courts of equity depart from the principle that they may not interfere to enforce the criminal law. * * *."

To the same effect, see *Woodfin* v. *Overnite Transportation Company,* 199 Va. 165, 98 S. E.2d 525; *Turner* v. *Hicks,* 164 Va. 612, 180 S. E. 543; *Long's Baggage Transfer Co.* v. *Burford,* 144 Va. 339, 132 S. E. 355; 10 M. J., Injunctions, Section 10, page 15.

As the sole syllabus point in this case the Court quotes the fifth point of the syllabus of *State* v. *Ehrlick,* 65 W. Va. 700, 64 S. E. 935, which is as follows: "If a charge is of a criminal nature, or an offense against the public, *and does not touch the enjoyment of property,* or health, it is not within the jurisdiction of a court of equity." (Italics supplied.) The Court neglected to quote the sixth, seventh and eighth syllabus points of the same case which are as follows:

"6. Equity has no jurisdiction to abate a public nuisance, either civil or criminal, at the instance of an individual or the state, not affecting or injuring the enjoyment of property or other personal rights.

"7. In so far as a public nuisance injures property or substantially interferes with the enjoyment thereof, directly or indirectly, or constitutes a purpresture, excluding citizens from the enjoyment of their civil rights in highways and other public grounds and places, or obstructing or interfering with the execution of the public business, it is abatable by injunction.

"8. If an injunction is necessary and proper for the protection of such rights, criminality of the injurious act does not bar the remedy in equity."

The principles stated in the sixth, seventh and eighth points of the syllabus are discussed in the body of the opinion (65 W. Va. 706, 64 S. E. 937-38) of the *Ehrlick* case.

From the legal principles previously referred to herein, I believe it is manifest that the trial court, in acting upon the application for injunction, was not only acting within the range of its jurisdiction, but that it was also entertaining a justiciable, litigable controversy affecting the personal and proprietary rights of the plaintiffs in the injunction proceeding. It is important to note that Code, 1931, 53-1-1, speaks disjunctively: "* * * when the inferior court has not jurisdiction of the subject matter in controversy, *or, having such jurisdiction,* exceeds its

legitimate powers." (Italics supplied.) I believe the decision in this case is nearly, if not entirely, authority for the proposition that a court "exceeds its legitimate powers" when it makes any ruling which is contrary to law in any case in which it admittedly has jurisdiction of the subject matter in controversy.

In the complaint by which the plaintiffs sought to restrain by injunction the unlawful competition by a competing business, they allege that numerous warrants, to no avail, had been obtained against the defendants and their employees; that the penal provisions of the law were enforced inside but not outside the City of Logan; that, in this respect, the plaintiffs were denied "equal protection of the laws and the right to equal enforcement thereof;" that this situation will cause plaintiffs, "as well as all other businesses similarly situated in the City of Logan and competitive with the defendants, great and irreparable injury from the nature and character of which there is no adequate remedy at law;" and that the continued issuance of warrants against the defendants and their employees would cause multiplicity of litigation "and would not provide an adequate and sufficient remedy, to which plaintiffs are clearly entitled."

It is obvious that the plaintiffs in the injunction action were interested only in protecting their business from unlawful competition by a competing business. There is no basis for asserting that their purpose was to prevent anybody from the resulting violation of the penal provisions which are so incidental and secondary in the Sunday Closing Law. It is my understanding that it has always been a concern of courts of equity to protect lawful business enterprises from unlawful competition.

For reasons stated, I would refuse to grant the writ of prohibition.